**IT IS HEREBY ORDERED** that defendant Burke's Motion to Dismiss (Doc. No. 19) is granted.

**IT IS FURTHER ORDERED** that plaintiff's complaint is dismissed as against Burke with prejudice.

### Leslie DOWNER, Plaintiff,

v.

### UNITED STATES of America, acting By and Through the UNITED STATES DEPARTMENT OF AGRICULTURE and SOIL CONSERVATION SERVICE, Defendants.

#### No. CIV 93–1005.

United States District Court,
D. South Dakota,
Northern Division.

April 11, 1995.

---

**2.** The Court notes that relator himself admitted in his deposition that he considers ACU, and not Burke, to be his "employer." (Lamar Dep. at 102–103.)

Jeffrey T. Sveen, Siegel, Barnett & Schutz, Aberdeen, SD, for plaintiff.

Bonnie P. Ulrich, U.S. Attorney's Office, Sioux Falls, SD, for defendants.

## MEMORANDUM OPINION AND ORDER

PIERSOL, District Judge.

Plaintiff brought this action for judicial review, pursuant to 5 U.S.C. §§ 701–06, of a decision by the United States Department of Agriculture [USDA], acting through the Soil Conservation Service [SOS] and the Agricultural Stabilization and Conservation Service [ASCS], depriving Plaintiff of certain USDA benefits upon determination that the Swampbuster provisions of the Food Security Act, 16 U.S.C. §§ 3821–23, had been violated. The United States counterclaimed for the payments advanced Plaintiff in 1989 under the Price Support and Production Adjustment Programs prior to the determination that Plaintiff had planted agricultural commodities on converted wetlands. Docket No. 4. Plaintiff repaid the full advance of $4624.00 on May 26, 1993. Administrative Record at Ex. 67 [hereinafter "A.R."]. The parties have filed cross-motions for summary

judgment, Docket Nos. 17 & 28. Also pending are Plaintiff's Motion for Oral Argument, Docket No. 28, and Defendant's Motion to Strike, Docket No. 35.

## FACTS AND PROCEDURE

This action arose under the "Swampbuster" provisions of the Food Security Act (FSA), 16 U.S.C. §§ 3821–23; Pub.L. 99–198, Title XII, 99 Stat. 1504; as amended under the Food, Agriculture, Conservation, and Trade Act of 1990 (FACTA), Pub.L. 101–624; 104 Stat. 3359. Under the Swampbuster provisions, persons who plant agricultural commodities on converted wetlands after December 23, 1985, are ineligible to receive certain USDA benefits scheduled to be received during any year commodities are planted on the converted wetlands.

Plaintiff farms land in Edmunds County, South Dakota, including two tracts of land which are the subject of this appeal:

(1) The "Glover wetland"[1] located in the SW ¼ of Glover township, section 17–T122N–R71W; farm 1677, tract 1665, fields 1–3; and

(2) The "Vermont wetland" located in the NE corner of the SE ¼ of Vermont township, section 17–T121N–R70W; farm 1677, tract 10053, field 2.

Both sites contain dugouts which Plaintiff filled in. In 1988 and 1989, Plaintiff participated in the Price Support and Production Adjustment Program, 7 U.S.C. § 1421, *et seq.* A.R. at Ex. 9, 13. In 1989, the SCS District Conservationist, Kevin Kehrwald, conducted field visits; determined that Plaintiff had converted the Vermont and Glover wetlands; and ascertained that rye had been planted on the area which included the Glover wetland and wheat on the area which included the Vermont wetland. A.R. at Ex. 17. Based on this determination, the ASCS County Office notified Plaintiff that he would be ineligible for benefits for the crop year. A.R. at Ex. 21.

1. The Court understands that whether these two areas are, in fact, wetlands, is the essence of Plaintiff's argument. However, the two areas are referred to as wetlands throughout the ad-ministrative record and in documents submitted to the Court. So that there is no confusion, they will continue to be referenced as "wetlands."

Plaintiff appealed this determination to the District Conservationist, Kevin Kehrwald, who reviewed his initial determination, and met with Plaintiff to review the materials upon which the determination had been based. On December 21, 1989, Kehrwald affirmed his initial determination. A.R. at Ex. 23, 25.

Plaintiff appealed the decision of the District Conservationist to the Area Conservationist, L.P. Kluck. A SCS resource conservationist, a SCS area engineer, a SCS soil scientist, and a soil specialist from the University of Minnesota conducted an on-site inspection on January 25, 1990. Plaintiff and his attorney were also present. On February 6, 1990, Kluck upheld the decision of the District Conservationist with regard to the Glover wetland but overturned the decision with regard to the Vermont wetland because he could not determine when the conversion had occurred. A.R. at Ex. 26–28.

Plaintiff immediately appealed to Billy Milliken, the SCS State Conservationist. A second on-site inspection was conducted by a soil conservation engineer, a South Dakota Area III soil scientist, and a SCS South Dakota biologist. Plaintiff was again present for the inspection.[2] On July 30, 1990, Milliken wrote Plaintiff that it had been determined that both the Glover and Vermont areas were converted wetlands. A.R. at Ex. 29, 38, 41.

Plaintiff next appealed to the Chief, SCS. The matter was returned to the state level to supplement the administrative record and an informal hearing was held. On October 9, 1990, the State Conservationist, Billy Milliken, again determined that the areas in question were converted wetlands. A.R. at Ex. 42, 45, 46, 48.

The case then went to the Chief, SCS, where the supplemented administrative record was reviewed by a wildlife biologist, drainage engineer and soil scientist, and a decision issued on April 5, 1991. The reviewers agreed with the determination that the areas were converted wetlands. This was the final level of administrative appeal. A.R. at Ex. 58, 59.

Plaintiff next applied to ASCS for reconsideration of the SCS determination and an informal hearing. The matter was discussed at the county ASCS Committee meeting on April 27, 1993. The committee determined that Plaintiff had exhausted his appeal rights through SCS, and that because the violation was continuing and Plaintiff had neither mitigated nor restored the areas in question, the good faith exception could not be applied. A.R. at Ex. 62, 64, 65.

Plaintiff then appealed the County ASCS determination to the State ASCS committee. The State Committee held a hearing and on September 22, 1993, determined that Plaintiff had not made a good faith effort to comply with the provisions of the Food Security Act. A.R. at Ex. 68, 70, 71.

Plaintiff finally appealed the decision of the State ASCS Committee to the National level. That determination, issued on March 3, 1994, reads in part:

> We have reviewed the entire case file and realize that Appellant disagrees with the SCS converted wetlands technical determination. However, the responsibility for determining whether an area is classified as converted wetland is assigned to SCS and ASCS is bound by that agency's technical determinations. Further, Appellant has exhausted his appeal rights of the technical converted wetland determination with SCS.

A.R. at Ex. 72 at 4. This request for judicial review followed.

## SCOPE OF REVIEW

■ The parties agree that this agency action is subject to an arbitrary and capricious standard of review. Doc. Nos. 18 at 34, 29 at 3. An agency's actions will be set aside only if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Arbitrary and capricious review looks at four things:

---

2. Plaintiff requested a hearing on this matter, later asked for a postponement due the need to review documents which he had yet to receive, but failed to reschedule the hearing. A.R. at Ex. 38, 39, 41.

(1) Has the agency relied on factors Congress has not intended it to consider?

(2) Has the agency entirely failed to consider an important aspect of the problem?

(3) Is the agency's offered explanation for its decision one that runs counter to the evidence before the agency?

(4) Is the agency's decision one that is so implausible that it could not be ascribed to a difference in view or the product of agency expertise? (That is, was there a rational connection between the facts found and the choice made.)

Childress & Davis, *Federal Standards of Review*, § 15.07 at 15–41 (2d ed. 1992) (citing *Motor Vehicle Manufacturers Ass'n v. State Farm Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983)). Restated, the test is: (1) whether the agency considered what it was supposed to consider; (2) whether the agency considered something it was not supposed to consider; and (3) whether there is a rational relationship between the evidence and the decision.

The Court reviews only the administrative record. 5 U.S.C. § 706 (1977); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 815, 28 L.Ed.2d 136 (1971) ("That review [by the District Court] is to be based on the full administrative record that was before the [agency] at the time [it] made [its] decision."); *Maxey v. Kadrovach*, 890 F.2d 73, 77 (8th Cir.1989), *reh'g denied, cert. denied*, 495 U.S. 933, 110 S.Ct. 2176, 109 L.Ed.2d 505 (1990) ("A federal court is confined to the administrative record in deciding an appeal under the APA,

unless the plaintiff can make a 'strong showing of bad faith or improper behavior.'").

 Agency determinations are afforded substantial deference. "The court is not empowered to substitute its judgment for that of the agency." *Bowman Trans., Inc. v. Arkansas–Best Freight System*, 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974), *reh'g denied* 420 U.S. 956, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975). This deference especially extends to an agency's unique experience and knowledge in its own area of expertise: "When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 1860, 104 L.Ed.2d 377 (1989). In other words, if an agency has properly considered the evidence placed before it and has a rational basis for its determination, the Court will not overturn that determination even if the Court would have reached a contrary determination.

## WETLANDS DETERMINATION

Plaintiff's first four arguments dispute SCS's factual determination that the two areas in question are wetlands. Plaintiff argues that SCS did not satisfy all three criteria the statute requires to establish the presence of a wetland: hydric soil, hydrophytic vegetation, and wetland hydrology. 16 U.S.C. § 3801(a)(16).[3] Second, Plaintiff argues that there is not substantial evidence that the dugout areas were manipulated in order to make crop production possible. 16 U.S.C. § 3801(a)(4).[4] Third, Plaintiff argues

---

**3.** The statute defines "wetlands" in the following manner:

> The term "wetland" ... means land that—
> (A) has a predominance of hydric soils;
> (B) is inundated or saturated by surface or groundwater at a frequency and duration sufficient to support a prevalence of hydrophytic vegetation typically adapted for life in saturated soil conditions; and
> (C) under normal circumstances does support a prevalence of such vegetation.
> 16 U.S.C. § 3801(a)(16) (1994 Supp.); 7 C.F.R. § 12.2(a)(20) (1994).

**4.** The statute defines "converted wetland" as follows:

> The term "converted wetland" means wetland that has been drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water) for the purpose or to have the effect of making the production of an agricultural commodity possible if—
> (i) such production would not have been possible but for such action; and
> (ii) before such action—

that SCS improperly determined that any conversion which occurred commenced after December 23, 1985, thereby making Plaintiff ineligible for a commenced conversion exception. 16 U.S.C. § 3822(b)(1)(A).[5] Finally, Plaintiff argues that both areas should be exempt from the Swampbuster provisions as "artificial wetlands" because they were dugouts. 16 U.S.C. § 3822(b).[6] For each of these determinations, Plaintiff is primarily critical of the use of aerial photographs of the areas in question in establishing that the areas were wetlands.

The first component of arbitrary and capricious review is whether the agency considered those things that it was supposed to consider. SCS examined all three requirements for a wetland; soil type, vegetation and hydrology. 16 U.S.C. § 3801(a)(16); 7 C.F.R. § 12.31 (1994). During two on-site field inspections, the soil was found to be hydric: Parnell series on the Glover wetland and Tonka series on the Vermont wetland. A.R. at Ex. 35. Because the land in question was heavily worked, SCS scientists examined vegetation at a comparison site which, in their opinion, had a similar soil type.[7] A.R. at Ex. 36. Aerial photographs of the area were examined to determine the hydrology of the areas in question from 1980 until 1990. A.R. at Ex. 24. As the State Conservationist explained in his letter announcing his determination:

> (I) such land was wetland; and
> (II) such and was neither highly erodible and nor highly erodible cropland.
> 16 U.S.C. § 3801(a)(4) (1994 Supp.); 7 C.F.R. § 12.2(a)(6) (1994).

5. The statute reads in pertinent part:

> No person shall become ineligible ... for program loans, payments, and benefits—
> (1) as the result of the production of an agricultural commodity on—
> (A) converted wetland if the conversion of such wetland was commenced before December 23, 1985[.]
> 16 U.S.C. § 3822(b)(1)(A) (1994 Supp.); 7 C.F.R. § 12.5(b)(i) (1994).

6. The statute reads in pertinent part:

> No person shall become ineligible ... for program loans, payments, and benefits—
> (1) as the result of the production of an agricultural commodity on—

The SCS determination of converted wetland for the [Glover wetland] is based on review of Agricultural Stabilization and Conservation Service (ASCS) compliance slides from 1980 through 1989, the SCS soil survey for Edmunds County, and field work done by the SCS field office, area office, and state office staff members.

A.R. at Ex. 48.

■ Plaintiff argues that the Food Security Act requires the delineation and certification of a wetlands map before program benefits may be withheld, citing 16 U.S.C. § 3822(a)(2). Neither party claims such a map exists for the areas at issue. Subsection (a) was added to FSA in 1990; Plaintiff argues for its retroactive application based on *National Wildlife Federation v. ASCS*, 941 F.2d 667, 671–72 (8th Cir.1991). In *NWF*, the Eighth Circuit held that the graduated sanctions provision of § 3822(h) were to be applied retroactively. The Eighth Circuit found that the specific language of Subsections (h) and (h)(3) indicated Congressional intent to apply the subsection retroactively. *Id.* at 672. Comparable language is missing from Subsection (a), which requires wetland delineation maps. In fact, the statute implies that not all areas will have been mapped by enactment of the statute, stating, "The Secretary shall not be required to provide an opportunity for an appeal of delineations completed prior to the enactment of this subsection...." 16 U.S.C. § 3822(a)(2).

> (B) an artificial lake, pond, or wetland created by excavating or diking nonwetland to collect and retain water for purposes such as water for livestock ... irrigation ... or flood control; ... or
> (2) for the conversion of—
> (A) an artificial lake, pond, or wetland created by excavating or diking nonwetland to collect and retain water for purposes such as water for livestock ... irrigation ... or flood control[.]
> 16 U.S.C. § 3822(b)(1), (2) (1994 Supp.); 7 C.F.R. § 12.5(b)(iv) (1994).

7. Plaintiff complains that the comparison site was some 30 miles away from the wetland being examined. The regulations require:

> In the event the vegetation on such land has been altered or removed, SCS will determine if a prevalence of hydrophytic vegetation typically exists in the local area *on the same hydric soil under the same hydrological conditions.*
> 7 C.F.R. § 12.31(b)(2)(ii) (1994).

I find no indication in the plain language of the statute that this subsection is to be applied retroactively.

■ Second, retroactive application of statutes is generally disfavored. The Supreme Court has stated, "Statutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose so to do plainly appears." *U.S. v. Magnolia Petroleum Co.*, 276 U.S. 160, 162–63, 48 S.Ct. 236, 237, 72 L.Ed. 509 (1928). Plaintiff's conversion of the wetlands in question was "fixed" before the amendment requiring wetlands delineation maps became effective on November 28, 1990. By that date, Plaintiff had already noticed his appeal of the state determination to the Chief, SCS, in Washington, D.C. A.R. at Ex. 42 (dated Sept. 7, 1990). Furthermore, to require compliance with newly enacted legislation during the later stages of the appeals process raises a number of "practical considerations" by requiring amendment of an untold number of decisions using evidence which might not exist. *Criger v. Becton*, 902 F.2d 1348, 1354 (8th Cir.1990) (holding an amendment narrowing flood policy coverage under FEMA had no retroactive application).

Third, subsection (h) alleviated the harshness of a penalty; subsection (a) affects the method used to determine ineligibility by imposing a duty on the government to delineate wetlands and, upon request, make on-site determinations. To permit retroactive application of that requirement would effectively nullify the application of the Swampbuster provisions for those properties for which there were no wetlands maps prior to November 28, 1990. It is not logical to find that a statute creating a method for determining liability would, by applying it retroac-

tively, lift liability for violations occurring during the previous five years.[8]

Finally, the regulations implementing § 3822 make specific reference to those parts of the Swampbuster provisions which have retroactive application.[9] Those retroactive provisions which apply to converted wetlands are: (1) mitigation through restoration of another converted wetland; (2) graduated sanctions; and (3) reliance upon and incorrect SCS determination for wetland or converted wetland. 7 C.F.R. §§ 12.5(b)(6)–(b)(8) (1994).

For all of these reasons, I find that Congress did not intend Section 3822(a) to have retrospective application.

■ The second component of arbitrary and capricious review is whether the agency considered something its should not have. Plaintiff argues that the aerial photographs should not have been considered in determining whether wetlands have been converted because they are ineffective to show vegetation, or hydrology—inundation or saturation. Plaintiff alleges that the aerial photographs are insufficient, as a matter of law, to establish the hydrology of the areas.

The test of whether SCS's determination was arbitrary and capricious is not whether the evidence was sufficient to support the finding that wetlands had been converted; the test is whether the agency abused its discretion in relying upon aerial photography. Given the fact that there was no need to develop evidence through field inspections prior to the reported conversion of these wetlands and the fact that SCS routinely uses aerial photography to locate and monitor wetland areas,[10] I find it was reasonable for SCS to rely on the aerial photographs.

---

8. The Swampbuster provisions became effective December 23, 1985. 16 U.S.C. § 3821(a).

9. The regulations state:
The provisions of this part apply to all actions taken after and to determinations made after or pending on November 28, 1990, except to the extent that § 12.5(b)(6) through (b)(8) have retroactive application to December 23, 1985 for certain actions and determinations regarding wetlands and converted wetlands.
7 C.F.R. § 12.3(b) (1994).

10. The slides in question are Edmunds County ASCS "compliance slides," A.R. at Ex. 39. As the State Conservationist wrote in a letter to Defendant's attorney:
The second paragraph ... raises questions regarding use of Agricultural Stabilization and Conservation Service (ASCS) compliance slides as an indicator that ponding or saturation occur. The use of aerial photography to indicate the conditions of wetland is a technique that is accepted and frequently used....

The final component of arbitrary and capricious review is whether there is a rational relationship between the evidence and the decision. Plaintiff argues that SCS failed to establish the three required characteristics when making the initial determination that these areas were wetlands; that they should have determined whether the areas were converted specifically in order to make crop production possible; that SCS improperly determined that the work done in constructing a drainage ditch in 1983 was separate from the work undertaken in 1989 and, therefore, not "commenced" prior to 1985; and that SCS failed to determine whether natural wetlands existed prior to creation of the artificial dugouts sometime before 1980. Each of these factual findings—or the lack of a factual finding—must be rationally based on the evidence in the administrative record.

■ Whether SCS properly established the three characteristics for a wetland has already been discussed. Based on the information available, SCS personnel evaluated the soil, vegetation and hydrology of the areas in question, as required by 16 U.S.C. § 3801(a)(16) and 7 C.F.R. § 12.31. The evidence was sufficient for SCS to find that these areas were converted wetlands.

■ Whether the areas were converted specifically in order to make crop production possible was a determination based primarily upon the aerial photographs. The statute is written in the disjunctive "or"—there will be liability for conversion of a wetland if it is manipulated "for the purpose or to have the effect of" making the land farmable. 16 U.S.C. § 3801(4). SCS was not required to show the purpose behind the conversion; it is sufficient that the aerial photographs showed the effect of conversion. With regard to the Glover wetland:

> The aerial photography from 1980 through 1986 clearly shows evidence of saturated conditions with no cultivation of crops reported. Since the dugout was removed and the surroundings graded for positive drainage the area in question appears dry and regularly farmed.

[I]t is part of the procedure used by SCS in South Dakota to map wetlands.

A.R., Ex. 58 at ¶ 6. With regard to the Vermont wetland, the District Conservationist wrote after an on-site inspection:

> Completed extensive field visit. Found as follows: (1) Dugout/wetland in SE–17 121–70 gone—drainage appears to be enhanced.

A.R. at Ex. 17, entry 9/28/89. I find that the evidence considered created a rational basis for the determination that these areas were converted wetlands.

■ With regard to Plaintiff's allegation that SCS improperly determined that the work done was not "commenced" prior to 1985, SCS relied on aerial photography and on field inspections. Under the regulations, this exemption requires active pursuit:

> A person must show that the commenced activity has been actively pursued or the conversion will not be exempt under this section. In this context, *actively pursued* means that efforts toward the completion of the conversion activity have continued on a regular basis since initiation of the conversion, except for delays due to circumstances beyond the person's control.

7 C.F.R. § 12.5(b)(5)(ii) (1994). Referring to the Vermont wetland, the State Conservationist wrote:

> On August 3, 1989 and September 17, 1989, the district conservationist observed that the dugout was filled and that drainage appeared to have been enhanced. The area office identified an excavated channel but did not determine when the modification occurred.... Review of the compliance slides indicates that between 1987 and 1988, a dugout had been replaced with the drainage channel.

A.R., Ex. 48 at 2. With regard to the Glover wetland, the State Conservationist wrote:

> Although this area was modified with a drainage ditch that was first observed on the 1983 slides, all or parts of this site continued to appear as wetland on the 1983, 1984, 1985, 1986, and 1987 slides. The district conservationist's observations from field checks completed on August 3, 1989 and September 29, 1989, were that

A.R., Ex. 56 at ¶ 2.

the dugout was filled and the wetland characteristics of the area were removed.

A.R., Ex. 48 at 2–3. The gap of six years between the 1983 modifications and those in 1989, and the evaluation of the ASCS compliance photographs lead me to conclude that whatever manipulation was begun prior to December 23, 1985, was also concluded before that date. I find that the evidence supports the conclusion that these areas remained wetlands after 1983 and were not converted until 1989.

■ Plaintiff's final allegation is that SCS failed to determine whether natural wetlands existed prior to creation of the artificial dugouts sometime before 1980. Plaintiff's argument is that, if the wetland was created by the excavation of the dugouts, conversion of that wetland does not create ineligibility for benefits. 16 U.S.C. § 3822(b). The parties concede that the filling of the dugouts themselves falls within the exception for artificially-created wetlands. Doc. 50 ("Filling the dugouts is not a wetland conversion, but filling in the wetland basin and improving the drainage is a conversion."). A "converted wetland" is any wetland that has been "filled, leveled, or otherwise manipulated." 16 U.S.C. § 3801(4)(A). The SCS reports state that field inspection of the Glover wetland "showed that 4 to 10 inches of new fill had recently been placed over Parnell soils." A.R. at Ex. 28, 41. Conversion also includes "any activity that results in impairing or reducing the flow ... of water." 16 U.S.C. § 3801(4)(A). Field inspection and slides indicated the replacement of the dugout with a ditch "providing positive drainage to the road culvert." A.R. at Ex. 41, 48. I find that the evidence is sufficient to show that the filling of the dugouts in both areas, while permissible in and of itself, affected the wetland basin or the drainage of the sites.

## DUE PROCESS

Plaintiff argues that he has been deprived of USDA benefits without due process of law. His argument is twofold: that he should have received notice that the Glover and Vermont areas were natural wetlands and that the statute is constitutionally vague.

A fundamental principle of due process is that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950); *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985).

Notice which is constitutionally sufficient must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. As *Mullane* states:

> The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.... [If] these conditions are reasonably met, the constitutional requirements are satisfied.

*Id.* at 314–15, 70 S.Ct. at 657. Some 35 years later, the Supreme Court addressed the rights of an individual to due process, stating:

> [W]e must keep in mind ... the fact that the very nature of the due process inquiry indicates that the fundamental fairness of a particular procedure does not turn on the result obtained in any individual case; rather, "procedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases, not the rare exceptions."

*Walters v. Nat'l Assn of Radiation Survivors,* 473 U.S. 305, 321, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220 (1985) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 344, 96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976)).

Plaintiff contends that he did not receive adequate notice to apprise him that the Glover and Vermont wetlands were natural wetlands. In support of his argument, Plaintiff cites the 1990 amendment to 16 U.S.C. § 3822 requiring wetland delineation maps.[11]

---

11. As previously discussed, 16 U.S.C. § 3822(b) requiring wetlands delineation maps has no retroactive application.

Doc. 29 at 15. Plaintiff also contends that the notice provided on the ASCS Wetlands Determination Form 026 was insufficient to put him on notice that the areas at issue were wetlands.

■ The Administrative Record indicates that Plaintiff had both knowledge of process used when converting wetlands and notice that there were wetlands on farm 1677 where the Glover and Vermont wetlands are located. In 1987, Plaintiff submitted a Form 1026 to SCS indicating that he intended to convert wet areas on farm 96. A.R. at Ex. 5, # 8. In 1988, Plaintiff indicated on his Form 1026 that he did not intend to convert land on either farm 96 or 1677 during that year. A.R. at Ex. 10. However, Plaintiff did indicate on that same form that he would be producing agricultural commodities on both the Glover and Vermont wetlands (Farm 1677, Tracts 10053 & 1665). *Id.* at # 6. Furthermore, in 1988, Plaintiff received a Form 026 on Farm 1677 which specifically stated:

> Wetlands are present on this farm and if conversion (drainage or alteration) of a wet area is planned an on-site investigation of the wet area should be requested from SCS prior to any conversion. This includes all tract's [sic] and fields under this farm number.

A.R. at Ex. 11, # 12 "Remarks." I find that Plaintiff understood the process. I further find that the exchange of forms 026 and 1026 between Plaintiff and ASCS between 1987–98 was sufficient to put Plaintiff on notice that there were wetlands on Farm 1677 and that he needed SCS approval for conversion.[12]

The second requirement for due process is the opportunity to be heard. "[T]he Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982). Plaintiff does not question the timing of the hearings which he received; rather he argues that the process itself was flawed because he did not

have the opportunity to cross-examine government witnesses, that the combination of investigative and adjudicative functions is highly unfair, and that later administrative reviews were mere "rubber stamps" of earlier determinations.

■ Briefly addressing Plaintiff's concerns, this Court finds that Plaintiff has no right to a full adversarial hearing which includes the right to confront and cross-examine witnesses. *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). As the Eighth Circuit has stated:

> "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' Within this general framework different situations may require different specific procedures."

*Riggins v. Bd. of Regents,* 790 F.2d 707, 711–12 (8th Cir.1986) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). Plaintiff had a total of four hearings or occasions to discuss and review the determination with personnel from either SCS or ASCS. In addition, Plaintiff was present during two on-site inspections of the wetlands in question. The alleged inability to cross-examine witnesses does not make the process constitutionally deficient.

The Supreme Court has also held that the combination of investigative and adjudicative functions within an agency such as SCS is presumptively honest and unbiased. *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975). As the Supreme Court wrote:

> "The case law, both federal and state, generally rejects the idea that the combination of judging and investigating functions is a denial of due process...." Similarly, our cases, although they reflect the substance of the problem, offer no support for the bald proposition ... that agency members who participate in an investigation are dis-

---

12. The regulations also place responsibility for contacting ASCS in order to participate in price support programs with those "[p]ersons who

wish to participate...." The primary purpose of the contact is for the completion of Form AD–1026. 7 C.F.R. § 12.4(f) (1994).

qualified from adjudicating. The incredible variety of administrative mechanisms in this country will not yield to any single organizing principle.

*Id.* at 53, 95 S.Ct. at 1467. Plaintiff has submitted no evidence to overcome the presumption that SCS's determination was unfair or unbiased.

■ Plaintiff's third allegation—that later reviewers "rubber stamped" earlier determinations—is as quickly disposed of. The review of the Area Conservationist's initial determination by the District Conservationist involved a field inspection by three SCS scientists. The next appeal, which was to the State Conservationist, involved a second on-site inspection by three different scientists. The appeal after that was to the National level and the case was returned to the State level so that the administrative record could be supplemented. Each appeal to the ASCS involved an informal hearing. It is apparent that the case received careful consideration at each appellate level.

## CONSTITUTIONAL VAGUENESS

■ Plaintiff's final contention is that the statute is constitutionally vague. As the Eighth Circuit has stated:

The Supreme Court has recognized that a noncriminal statute is unconstitutionally vague under the due process clause of the Fifth or Fourteenth Amendments when its language does not convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice. A noncriminal statute is not unconstitutionally vague, however, where its terms are such that the ordinary person exercising common sense can sufficiently understand and fulfill its prescriptions.

*Horn v. Burns & Roe,* 536 F.2d 251, 254 (8th Cir.1976); *United States v. J.H.H.,* 22 F.3d 821, 828 (8th Cir.1994). I find that the statutes in question, 16 U.S.C. §§ 3801 and 3821–23, are not unconstitutionally vague. The statutes specifically list requirements for determining whether an area is a wetland, and where terms are technical or beyond common knowledge, they are further defined, both within the statute and by regulation. *See, e.g.,* "wetland" defined at 16 U.S.C.

§ 3801(a)(16), and "hydric soil" defined at 16 U.S.C. § 3801(a)(8). The statutes are sufficiently clear so that a person of common understanding would understand that producing agricultural commodities on converted wetlands results in ineligibility for certain agricultural programs.

## SUMMARY

The case before this Court is the ninth review of the SCS determination that the Glover and Vermont wetlands are converted wetlands. Plaintiff has exhausted all administrative remedies by appealing the determination through all SCS and ASCS channels. He has received the full measure of due process to which he was entitled. It is the finding of this Court that there has been no abuse of discretion by any of the administrative agencies that have reviewed the determination that the Glover and Vermont wetlands are converted wetlands within the meaning of 16 U.S.C. §§ 3821–23.

Having considered the briefs and the record in this case, and for all the stated reasons,

THEREFORE, IT IS ORDERED,

(1) That Defendant's Motion to Strike, Docket No. 35, is granted in part and denied in part. Paragraph 4 is admitted as it clarifies the references to the property which is the subject of this lawsuit. Paragraph 5 is admitted as it is fairly supported by the record. Paragraphs 6, 7, and 11 are denied as not material statements of fact. Paragraph 13 is denied as it contains no citation to the record as required by Local Rule 56.1(B) and is also unsupported by the record.

(2) That Defendant's Motion for Summary Judgment, Docket No. 17, is granted and Plaintiff's Motion for Summary Judgment, Docket No. 28, is denied. The determination that Plaintiff is ineligible for price supports due to planting agricultural commodities on converted wetlands in violation of 16 U.S.C. § 3822(a) is affirmed. Plaintiff's suit is dismissed with prejudice.

Defendant's counterclaim is dismissed with prejudice.

(3) That Plaintiff's Motion for Oral Argument, Docket No. 28, is denied as moot.