_____

No. 95-2540
_____

Leslie Downer,                          *
                                        *
        Appellant,                      *
                                        *
    v.                                  *   Appeal from the United States
                                        *   District Court for the
United States of America,               *   District of South Dakota.
acting by and through the               *
United States Department of             *         [PUBLISHED]
Agriculture and Soil                    *
Conservation Service,                   *
                                        *
        Appellee.                       *

_____

            Submitted:  December 11, 1995

            Filed:  September 19, 1996
_____

Before McMILLIAN, JOHN R. GIBSON, and BEAM, Circuit Judges.
_____

PER CURIAM.


    Leslie Downer was denied crop subsidy payments for his 1989 crop
after the United States Department of Agriculture (USDA), acting through
the Soil Conservation Service (SCS) and the Agricultural Stabilization and
Conservation Service (ASCS),[1] determined that Downer had violated the
Swampbuster provisions of the Food Security Act, 16 U.S.C. §§ 3821-3824
(1994).  Downer exhausted his administrative appeals and filed suit in
federal district court, contesting the agency decision as arbitrary and

_____

    [1]We will refer to these entities collectively as "the agency,"
except where clarity requires specificity.

capricious.  The district court granted summary judgment to the agency.
Downer appeals, and we affirm.

## I.

Downer farms land in Edmunds County, South Dakota, including two
tracts that contained manmade "dugouts," or water holes.  In 1988 and 1989,
Downer participated in the Price Support and Production Adjustment Program,
under which he received payments from the government.  Under Swampbuster,
persons who plant agricultural commodities on converted wetlands in
violation of Swampbuster become ineligible for government price support
payments.  16 U.S.C. §§ 3821(a)(1), 3801(a)(4)(A).  Downer filled the two
man-made dugouts and the surrounding area during the period between the
1988 and 1989 growing seasons, and planted agricultural commodities over
the dugouts and the surrounding area.  The agency concedes that filling a
manmade dugout in itself is permissible.  16 U.S.C. § 3822(b)(2).  However,
the SCS determined that the dugouts had been situated in wetlands, and that
Downer had spread fill over wetland areas beyond the boundaries of the
dugouts.

Downer appealed through the SCS the determination that his filling
activity violated Swampbuster, but the SCS Chief ultimately determined that
the areas in question were converted wetlands.  Downer then appealed
through the ASCS administrative processes, asking for reconsideration of
the SCS's technical determination or for a finding that his violation was
mitigated or excused under the good faith exception to Swampbuster.  See
16 U.S.C. § 3822 (h)(i).  He was again unsuccessful.

On May 26, 1993, Downer refunded to the ASCS the $4,624 in price
support payments he had received in 1989.  He sought review in the district
court under 5 U.S.C. §§ 702-706, claiming that the SCS and ASCS
determinations were wrong, and arbitrary and capricious, and denied him due
process of law.

**II.**

**A.  Standard of Review**

Four of the questions Downer raises are classic examples of factual disputes implicating substantial agency expertise: 1) whether the areas in question were wetlands; 2) whether such wetlands were converted; 3) whether the conversion was commenced before December 23, 1985; and 4) whether the areas were artificial rather than natural wetlands.  Our review of these questions, as the parties agree, is limited to a determination of whether the decisions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  This narrow review entails a "searching and careful" de novo review of the administrative record presented to determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1989).

To perform this review the court looks to whether the agency considered those factors Congress intended it to consider; whether the agency considered factors Congress did not intend it to consider; whether the agency failed entirely to consider an important aspect of the problem; whether the agency decision runs counter to the evidence before it; or whether there is such a lack of a rational connection between the facts found and the decision made that the disputed decision cannot "be ascribed to a difference in view or the product of agency expertise."  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  If the agency itself has not provided a reasoned basis for its action, the court may not supply one.  Id.

Nonetheless, the reviewing court may not substitute its judgment for that of the agency and must give substantial deference to agency determinations.  Id.   This deference is particularly

appropriate when the agency determination in issue concerns a subject within the agency's own area of expertise. Marsh, 490 U.S. at 377-78. An agency making fact-based determinations in its own field of expertise, particularly where those determinations are wrapped up with scientific judgments, must be permitted "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." Id. at 378.

## B. Substantive Due Process

For Downer to lose his eligibility for USDA crop price supports, the agency must have determined that the land in issue was a wetland, that Downer converted the wetland, that the conversion did not start before December 23, 1985, and that Downer planted an agricultural commodity on the converted wetland.[2] Downer does not dispute that he planted an agricultural commodity on the land in issue; he argues, however, that the agency findings on all the other points were arbitrary and capricious.

### 1. Wetland Determination

Under Swampbuster, the term "wetland" refers to land that

(A)   has a predominance of hydric soils;
(B)   is inundated or saturated by surface or groundwater at a frequency and duration sufficient to support a prevalence of hydrophytic vegetation typically adapted for life in saturated soil conditions; and

(C)   under normal circumstances does support a prevalence of such vegetation.

---

[2]Downer also argues that the agency had to determine that the wetland was not artificially created in the first place. The agency argues this step is irrelevant and need not be performed. Because of our discussion in Part II. B.4. we need not resolve this issue.

-4-

16 U.S.C. § 3801 (a)(16).  The administrative record establishes that the agency considered all three factors.  The SCS took soil samples from the areas in dispute and used those samples to determine that the areas had a predominance of hydric soils.  A series of annual aerial photographs, taken in July and August, the hot, dry months of summer, was examined to determine the saturation or inundation history of the areas in question.  Because the soil was heavily worked, the SCS visited sites it deemed comparable to the areas in question to determine whether the sites supported or would have supported a prevalence of hydrophytic vegetation before Downer's alterations.

Downer complains that while the agency considered all three factors, the agency's evidence and methodology does not support its conclusions as to factors (B) and (C).  Specifically, he complains of the use of aerial photography and comparison sites.  The agency responds that such methodology is standard in its field of expertise and soil conservation.  Agency regulations bear out the agency's contention.  See 7 C.F.R. § 12.31(b)(2)(ii)(1995).  Downer presents no evidence aside from the bald assertion that the agency method is unacceptable or flawed.  We must therefore reject his complaints.

There is also no evidence that the agency considered any factors Congress did not intend it to consider in making its determination, nor is there any indication that the agency failed to consider an important aspect

of the wetlands determination problem.[3]   The agency's technical

_____

[3]Downer argues that 16 U.S.C. § 3822(a), which instructs the Secretary of Agriculture to create wetland delineation maps, should be applied retroactively to his case.  The amendment was enacted in 1990, while Downer, having exhausted his local and state reviews, was appealing the agency determination through the national administrative process.  Retroactive application of statutes is disfavored in the absence of clear congressional intent to the contrary.  See Miller v. Federal Emergency Management Agency, 57 F.3d 687, 689 (8th Cir. 1995).  Congress clearly indicated those subsections of section 3822 which it intended to have retroactive effect.  See National Wildlife Fed'n v. ASCS, 955 F.2d 1199, 1204-05 (8th Cir. 1992).  It did not give any indication that the mapping subsection was to be retroactive.

Further, Congress is presumed to know the legal background in which it is legislating.  See, e.g., Fogerty v. Fantasy, Inc., 114 S. Ct. 1023, 1033 (1994); Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 108 (1991).  This background includes not only the convention that retroactivity must be clearly intended, but also the convention that federal benefits and subsidies are generally fixed according to the law in effect at the time of the grant.  Bennett v. New Jersey, 470 U.S. 632, 638 (1985).  If these provisions applied retroactively, they would require the reexamination of five years' worth of decisions.  In these circumstances, we interpret as intentional Congress's silence on the subject of retroactivity.  It is telling that Congress not only did not make the subsection retroactive, it specifically disallowed the subsection's retroactive application to mapping appeals.  16 U.S.C. § 3822(a)(2).  It is clear that Congress was trying to soften the penalties and fine tune the focus of Swampbuster through section 3822, while causing as little administrative disruption as possible.

Finally, the managing agency, the USDA, which has the responsibility for implementing the Food Security Act and Swampbuster statutory scheme, has construed subsection (a) not to apply retroactively, while construing certain other subsections of section 3822 to do so (subsections providing for mitigation through restoration, graduated withholding of subsidies depending on the gravity of the violation, and Swampbuster errors made in reliance on the agency's own errors).  7 C.F.R. § 12.5(b)(6)-(8).  Even if there were any question as to the retroactivity of subsection (a), the USDA's policy of retroactivity for the provisions softening penalties and nonretroactivity for provisions modifying the way we determine the underlying violations is a reasonable construction of the Swampbuster statutory scheme.  See Chevron U.S.A. v. Natural

determination is squarely within

_____

Resources Defense Council, Inc., 467 U.S. 837, 843-45 (1984); Sullivan v. Everhart, 494 U.S. 83, 89 (1990).

its field of expertise and was made in reliance on its own qualified experts' examination of the sites and other relevant data.  The decision was rational and does not run counter to the evidence: tests showing hydric soils; photographic evidence showing a history of wet conditions; evidence of buried hydrophytic vegetation at the sites; and evidence of hydrophytic vegetation at

comparable but undisturbed sites.  Thus, the dispute is within the realm of agency expertise, and not the result of arbitrary and capricious decision-making.

## 2. Agency Determination of Wetland Conversion

Under Swampbuster, a wetland has been converted when it has been:

> drained, dredged, filled, leveled, or otherwise manipulated (including any activity that results in impairing or reducing the flow, circulation, or reach of water) for the purpose or to have the effect of making the production of an agricultural commodity possible if--
>
> > (i) such production would not have been possible but for such action; and
> >
> > (ii) before such action--
> >
> > > (I) such land was wetland; and
> > >
> > > (II) such land was neither highly erodible land nor highly erodible cropland.

16 U.S.C. § 3801(a)(4)(A).

The administrative record shows that the agency determined, through soil tests and field observations, that Downer's filling of the dugouts extended onto the surrounding wetland area and that Downer's activity had made it possible to produce agricultural commodities on land where such commodities could not have been regularly produced before.  Downer vigorously disputes these findings, asserting that he only filled the dugouts, not the surrounding areas.  He also disputes that his actions have fundamentally changed the characteristics of the surrounding wetlands.

There is no question that Downer filled the dugouts, just a dispute as to the extent and effect of the fill. Agency soil scientists took test bores and found that Downer's fill job extended beyond the boundaries of the dugouts onto the surrounding wetlands and that the fill had been contoured to enhance drainage. Relying on site visits by its experts and aerial photography, the agency also determined that ditching had been enhanced at one of the sites. Downer, in turn, presented his own expert's soil tests to show that the fill job was tailored to the dugouts and did not substantially extend beyond those boundaries.

While there is evidence in the record cutting both ways, the agency was entitled to rely on the tests and observations made by its own experts. The aerial photographic records show wetlands surrounding the dugouts before Downer's manipulation of those areas, and site visits established that the areas were being used to produce agricultural commodities after the wetlands were drained, covered, and recontoured. The agency's determination of conversion is supported by the evidence and is not arbitrary and capricious.

### 3. Agency Determination of Date of Conversion

There is no loss of crop subsidies when a farmer produces an agricultural commodity on converted wetlands if the conversion of those wetlands commenced before December 23, 1985. 16 U.S.C. § 3822(b)(1)(A). Downer argues that digging the dugouts in the first place constituted "manipulating" the wetlands; therefore, the "manipulation" began before 1985 and Downer was merely continuing an ongoing process by his activities in 1989. He also argues that he dug a drainage ditch in 1983 in one of the wetlands, and that the 1989 activity was a continuation of that ongoing wetland conversion.

So, the question boils down to what "commenced" means.  The agency has interpreted "commenced" to mean "active pursuit" in that "efforts toward the completion of the conversion activity have continued on a regular basis . . . except for delays due to circumstances beyond the person's control."  7 C.F.R. § 12.5(b)(5)(ii).  The farmer has the burden to show that he falls within this exception and thus should not be disqualified.  Id.

Here, there is a photographic record showing saturated conditions from 1980 through 1988.  The only activity between the pre-1980 construction of the dugouts and the subsequent filling of the wetlands is a ditch constructed in 1983, and the aerial record shows that it did not change the existing characteristics of the wetland areas until the actual conversion six years later.  The administrative record more than supports the agency determination that Downer did not begin the "active pursuit" of conversion until 1989.

### 4. Artificial Wetlands

Downer argues that it was the construction of the dugouts that created the wetlands surrounding the dugouts, and that 16 U.S.C. § 3822(b) exempts from ineligibility those who convert artificially created wetlands.  Downer states that the wetlands "were obviously created by excavating and/or diking the land to collect and retain water for purposes such as water for livestock."  Downer cites nothing in the record to support his assertion that the wetlands are artificial.  In fact, Downer affirmatively states that there is no evidence on the issue in the record before the agency.  His brief states:  the "USDA utterly failed to consider or determine whether natural wetlands existed in these areas prior to, or in the absence of, the artificial dugouts.  There is no evidence in the record to address this issue."  (emphasis added).

-11-

This statement dooms Downer's argument for two reasons.  First, it is an admission that he failed to present the point before the agency.  We need not consider arguments the parties failed to raise before the agency.  See Texarkana Metro. Area Manpower Consortium v. Donovan, 721 F.2d 1162, 1164 (8th Cir. 1983).

Second, Downer has admitted that he failed to carry his burden of proof.  The regulations specifically assign the burden of proof on this issue to Downer.  7 C.F.R. § 12.5(9).  Section 12.5(9) states explicitly: "It is the responsibility of the person seeking an exemption related to converted wetlands under this section to provide evidence such as receipts, crop history data, drawings, plans or similar information, for purposes of determining whether the conversion or other action is exempt in accordance with this section."  Downer has not, however, established the facts to show that he would fall within the exemption, but relies only on the extremely general assertion quoted above.  He has pointed to nothing in the record to demonstrate the basis for the exemption applying to him.  The agency has stated that Downer was notified that he must inform the local agricultural authorities of any plans to convert wetlands, but he did not do so.  The burden rests with Downer not only to establish facts warranting the exemption before the agency, but also to demonstrate to this court where in the record those facts may be found.  We have examined the record in vain for such evidence, but in the end the burden is not on this court to search the record for error.  Wilson v. Jotori Dredging, Inc., 999 F.2d 370, 372 (8th Cir. 1993) (citing United States v. Cohen, 738 F.2d 287, 290 (8th Cir. 1984)); Holt v. Sarver, 442 F.2d 304, 307 (8th Cir. 1971).

No one contends that the filling of dugouts was a Swampbuster violation; the issue before us concerns the filling of wetlands surrounding the dugouts.  The record made clear that after December 23, 1985 Downer filled wetlands outside the dugout areas with four

to ten inches of foreign fill, and reworked the drainage ditch that provided positive drainage to the road culvert.  Further, the filling of the dugouts, while permissible in and of itself, affected the wetland basin or drainage of the sites, as the district court stated.  The agency cogently argues that there is thus a rational connection between the evidence in this case and the decision of the SCS, so that it was not an arbitrary and capricious determination.

In all there were nine separate hearings and reconsiderations as part of the agency determination.  On the basis of this record, we can only conclude that the district court, in a painstaking analysis of the administrative record, did not err in concluding Downer violated Swampbuster and was not entitled to an exemption.

## C.  Procedural Due Process

### 1. Notice

Downer also argues that he was deprived of due process because he did not receive notice before his activities that conversion of wetland could render him ineligible for crop subsidy payments.[4]  Regardless of whether the USDA, rather than the applicant for subsidy, has the duty to insure that the applicant be informed of the program's restrictions, the administrative record shows that Downer's assertion that he did not receive notice is baseless.  Downer was specifically alerted to the presence of wetland areas on his farms and warned not to convert them without consulting the

---

[4]Downer includes a vagueness argument as part of his lack of notice theory.  "A noncriminal statute is not unconstitutionally vague . . . where its terms are such that the ordinary person exercising common sense can sufficiently understand and fulfill its prescriptions."  Horn v. Burns and Roe, 536 F.2d 251, 254 (8th Cir. 1976).  We consider the prescriptions of Swampbuster very detailed and not in the least ambiguous.  Thus, the statute is not impermissibly vague.

agency, at the risk of losing his eligibility. On forms filed April 8, 1987, March 9, 1988, and March 20, 1989, Downer certified that he would not produce an agricultural commodity on converted wetlands without first consulting with the USDA. In 1988, the SCS notified Downer that wetlands might be present and if conversion of a wetland area was planned, an on site SCS investigation should be requested before any conversion. The SCS communication also stated that there were wetlands and hydric soils on Downer's farm. Downer planted agricultural commodities in the two areas which were determined by the SCS to be converted wetlands. There is no showing that he consulted with the SCS before doing so, a fact on which the SCS relied in its National Appeals Division determination dated March 3, 1994. Thus, Downer had adequate notice.

### 2. Hearing

Downer also contests the adequacy of his hearing. After he acted in the face of the warnings described above, Downer was given extensive process before he was required to refund the $4,624 in issue. His case was reviewed at the local, state, and national levels; at least seven agency experts and scientists visited the sites in question; and additional agency scientists reviewed those tests and determinations. Downer was present during at least two site visits, and presented his case either in person or in writing at the various levels of agency review. Downer's claim that he was not given an adequate hearing is wholly without merit.

### III.

We affirm the judgment of the district court.

BEAM, Circuit Judge, concurring and dissenting.

## I. BACKGROUND

The factual background to this appeal is set out in some detail in the district court opinion and accompanying administrative record. See Downer v. United States, CIV 93-1005 (S.D. filed Apr. 11, 1995). In essence, Downer filled two man-made dugouts during the period between the 1988 and 1989 growing seasons. The SCS determined that the dugouts had been sited in "wetlands" as defined by Swampbuster and that fill had been spread over "wetland" area beyond the boundaries of the dugouts. The agency concedes that filling a man-made dugout in itself is permissible. See 16 U.S.C. § 3822(b)(2). The issue is whether Downer went beyond that and altered the surrounding "wetland," and if so, whether Downer's actions fall into one of the exemptions to Swampbuster. If Downer's actions amount to "conversion" of the surrounding "wetland," and do not fall into an exemption, he has violated Swampbuster. See 16 U.S.C. §§ 3821(a)(1); 3801(a)(4)(A). A violator who then farms the converted "wetland" becomes ineligible for price support payments for that crop year. Id. § 3821(a)(1). A determination that the violator acted in good faith and/or that the violator has taken certain remedial actions may, however, result in complete or partial restoration of farm program subsidies. Id. § 3822(h)(1) & (2).

Downer appealed, through the SCS's many layers of administrative process, the SCS determination that his filling activity had violated Swampbuster. He was unsuccessful. He then appealed, through the ASCS administrative processes, for reconsideration of the SCS technical determination and/or for a finding that his violation was mitigated or excused under the good faith exception to Swampbuster. He was again unsuccessful. On May 26, 1993, Downer refunded to the ASCS the $4,624 in price support payments which he had received in 1989. He then sought review in

-15-

the district court, under 5 U.S.C. §§ 704-706, claiming that the determinations by the SCS and ASCS were wrong, were arbitrary and capricious, and denied him due process of law.[5]

## II.  DISCUSSION

I concur in Parts II.A, II.B.1, II.B.2, II.B.3, and II.C. of the court's opinion.  In my view, the result reached by the court in Part II.B.4 (Artificial Wetlands) is both unfair to Downer and validates an incorrect and unlawful construction of 16 U.S.C. § 3822(b) and 7 C.F.R. § 12.5(9) by the SCS.  Thus, I dissent.

Downer argues that it was the pre-1980 construction of the dugouts in dry areas that created the wet areas in the first place, and thus he is exempted from ineligibility by 16 U.S.C. § 3822(b).  Subsection (b) exempts from ineligibility those who farm or convert "wetland created by excavating or diking nonwetland to collect and retain water."  Id.  Specifically,

> No person shall become ineligible under section 3821 of this title for program loans, payments, and benefits--
>
> (1) as the result of the production of an agricultural commodity on--
>
> . . .
>
> (B) an artificial lake, pond, or wetland created by excavating or diking nonwetland to collect and retain water for purposes such as water for livestock . . . or flood control;
>
> . . .
>
> or;

---

[5]There is some overlap in the chronology of procedural events. Downer filed the initial suit before the last ASCS determination of no good faith, and refunded the price support payments only after the government counterclaimed for them.  These overlaps are, however, irrelevant for purposes of this appeal.

        (2) for the conversion of--

            (A) an artificial lake, pond, or wetland created by
        excavating or diking nonwetland to collect and retain
        water for purposes such as water for livestock . . . or
        flood control.

Id. Downer complains that the agency has not shown that the "wetlands" at
issue predate the dugouts.  The agency maintains that once it shows that
the area became a "wetland" and was "converted" as those terms are defined
in sections 3801(a)(4)(A) & (a)(16), see supra at 4-5 & 7, it need not show
how or when the "wetland" came about.  The agency asserts that section
3822(b) permits filling of and production of agricultural commodities on
artificial lakes and dugouts, but not the filling of and production of
agricultural commodities on any "wetlands," however or whenever created.[6]
The agency gives no basis or rationale for this assertion which is, of
course, contrary to the plain language and import of section 3822(b).  This
assertion is also contrary to the agency's own regulations which exempt
production of agricultural commodities on artificially created "wetlands."
7 C.F.R. § 12.5(b).  Because the regulation merely reiterates, verbatim,
the statutory exemption for artificially created "wetlands," it is the
statute to which I turn.

     While I must defer to a reasonable agency statutory interpretation,
see Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467
U.S. 837, 843 (1984), I cannot defer to obtuse interpretation or
noninterpretation.  The agency has, in fact, failed to interpret sections
3822(b)(1)(B) and (2)(A) at all.  The agency does not point out, as it well
might, that subsection (b)(1)(B), which exempts production of agricultural
commodities on

_____

        [6]I note that the district court did not consider the question
of whether the "wetlands" were artificially created to be
irrelevant. Rather, that court, in addressing the question, seems
to have assumed the answer rather than find it in the agency
record.  See Downer v. United States, CIV 93-1005, mem. op. at 15
(S.D. filed Apr. 11, 1995).

artificially created "wetlands," was included in the original Swampbuster enacted in 1985; but subsection (b)(2)(A), which explicitly exempts "conversion" of artificial "wetlands," was added by the 1990 amendments. The district court applied the later, 1990, version of section 3822(b) when it considered the issue, evidently because the agency failed to alert that court that there had been a change.  Compare Food Security Act, § 1222(a), Pub. L. No. 99-198, 99 Stat. 1508 (1985) (codified at 16 U.S.C. § 3822 (Supp. IV 1986)) with Food and Agriculture Act, § 1422, Pub. L. No. 101-624, 104 Stat. 3573 (1990) (codified as amended at 16 U.S.C. § 3822 (Supp. III 1991)).[7]  The version of the exemption for artificial "wetlands" in effect at the time of Downer's production of agricultural commodities was thus, perhaps, not as explicit as after the 1990 elucidation.  However, even without the 1990 exposition, the original section 3822 makes abundantly clear that whether the "wetlands" in question here were artificially created is relevant indeed.

Had the agency interpreted the statute, or even its own regulations (which, as noted, merely replicate, verbatim, the version of subsection (b) in effect at the time of their issue),[8] we would have the benefit of their expertise in considering whether

---

[7]I realize that the notes to 16 U.S.C.A. § 3822 state that the 1990 amendment of that section did not change subsection (b) other than relettering.  Examination of the U.S. Code, however, shows those notes to be in error.

[8]USDA's regulations reproduce the exemptions for artificially created "wetlands."  First, 7 C.F.R. § 12.5(b)(1)(iv)(A) (1995) explicitly exempts a farmer from any penalty from an SCS finding of "conversion of wetland . . . [i]f the area is . . . artificial . . . wetland," making the agency's claim of irrelevance all the more puzzling.  The older version of the regulation, 7 C.F.R. § 12.5(d)(1)(ii) (1989), reproduces the original statute's proscription against a determination of ineligibility "as the result of the production of an agricultural commodity on . . . [a]n artificial . . . wetland," which also puts artificiality clearly in issue.  The agency does not address or even mention these regulations in its assertion of irrelevance.

-18-

subsection (b)(1)(B) (the exemption permitting production of agricultural commodities on artificially created lakes, ponds, and "wetlands") necessarily implies an exemption for the conversion which permits that production.  Or, if not, whether subsection (b)(2)(A) applies retroactively.  However, because subsection (b)(1)(B) obligatorily, if impliedly, exempts the "conversion" of an artificially created "wetland," the retroactivity of the clarification provided by subsection (b)(2)(A) need not concern us.

"Agricultural commodities" are defined as "any agricultural commodity planted and produced . . . by annual tilling of the soil."  16 U.S.C. § 3801(a)(1)(A).  Such production, therefore, necessarily requires the filling of an artificially created lake or pond.  This the agency concedes. I see no reason why the third listed exempted entity, an artificially created "wetland," would be subject to any different interpretation.  The plain language of section 3822(b)(1)(B) exempts "production of an agricultural commodity on . . . an artificial lake, pond, <u>or wetland</u>." (Emphasis added).  Section 3822(b) has always contained a separate exemption for production of agricultural commodities on "wetlands," of any origin, when such production is made possible by entirely natural events such as drought.[9]  16 U.S.C. § 3822(b)(1)(D).  Thus, the production of agricultural commodities exempted in subsection (b)(1)(B) must be production made possible by manipulation of artificially created "wetlands."  Otherwise, the inclusion of "wetland" in subsection (b)(1)(B) is mere surplusage.

Congress must be presumed to be using the definitions it provides for a statutory scheme.  Here, Congress clearly exempted the "production of an agricultural commodity" on artificially created "lake[s], pond[s], or wetland[s]," and at the same time provided the definitions and penalties for "conversion" of

---

[9]This alternate exemption is present in section 3822 both as originally passed, and as amended.

-19-

"wetlands."  Thus the mere determination of "wetland" and "conversion" is not enough.  There must be a determination that the "wetlands" in question were naturally occurring.[10]  To find otherwise would render Congress's exemption of those who "produce an agricultural commodity" on artificial "wetlands" nugatory and meaningless.  Such an interpretation cannot be correct.

While the evidence in the administrative record as to soil type may be sufficient for an expert determination that the "wetlands" predated the dugouts, we are not authorized or qualified to make such a determination.  There also may be aerial photographs existent which show that the wet areas predated the dugouts, but no such photographs are in this record.  Or it may be that the agency scientists implicitly determined that the "wetlands" were naturally occurring and predated the construction of the dugouts.  I do not know and the other members of the panel cannot know because the agency has given us no guidance.

When the agency has neither argued nor addressed an important issue, we may not do it for them.  See Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43. If the agency itself has not provided a reasoned basis for its action, the court may not supply one.  Id.  We may not substitute our judgment for theirs, and here the agency, relying on a clearly erroneous statutory interpretation, has apparently made no judgment as to the issue at all. Rather, it

---

[10]Section 3801(a)(4)(B) further confirms the necessity of such a determination.  That subsection directs that there shall be no finding of "converted wetland[s]" if "production of an agricultural commodity" is possible due to a natural occurrence such as drought and "is not assisted by an action of the producer that destroys natural wetland characteristics."  Id. (emphasis added).

We, of course, do not make any finding on what "naturally occurring" means, or on the interplay between that and "artificially created."  Perhaps "artificial" "wetlands" become "natural" after the passage of long periods of time.  These are the sorts of interpretive nuances which Congress committed to the agency's expertise in the first instance.

relies on the bald assertion that the possible artificial origin of the "wetlands" is irrelevant. That assertion is simply wrong. An agency interpretation and application of a statutory scheme must incorporate, or at least deal with, the statutory exemptions embedded within that scheme. I find no place in the administrative record where the question of artificial creation is explicitly considered or addressed, and the agency does not direct us to any such determination. Because the agency has not addressed an important aspect of the problem in any way, I would find the agency's determination that Downer's conversion of "wetlands" rendered him ineligible for crop subsidy payments to be arbitrary, capricious, and not otherwise in accordance with law. Id.

The court simply chooses to ignore this statutory dereliction by the agency. It accomplishes this by first asserting that Downer "failed to present the point" before the agency. Supra at 10. This is error. While Downer conceded that no evidence on the point was offered by either party, he has asserted this legal issue from the inception of this dispute.

Next, the court assigns to Downer the burden of proof of the facts necessary to establish this essential legal element of the agency's claim against Downer. This is also error. The statute says that "[n]o person shall become ineligible [for price support payments] . . . as the result of production . . . on . . . an artificial . . . wetland created by excavating or diking nonwetland . . . or for the conversion of . . . an artificial lake, pond, or wetland. . . ." 16 U.S.C. § 3822(b). It is the agency who is asserting Downer's ineligibility; thus, proof of ineligibility should be the burden of the government. According to the court, all the agency must do is assert ineligibility. This, then, according to the court, shifts to Downer the burden of affirmatively refuting this bald legal conclusion, even in the face of an agency assertion that is based upon an erroneous statutory construction. I disagree.

-21-

The court points to an agency regulation, 7 C.F.R. § 12.5(b)(9), a regulation not applicable to the procedures in play in this matter. And, even if arguably applicable, the regulation violates the underlying statute that defines ineligibility. The regulation states in pertinent part:

> (9) It is the responsibility of the person seeking an exemption related to <u>converted wetlands</u> under [section 12.5] to provide evidence, such as receipts, crop history data, drawings, plans or similar information, for purposes of determining whether the conversion or other action is exempt in accordance with [section 12.5].

7 C.F.R. § 12.5(b)(9) (emphasis added).

Here, as in 16 U.S.C. § 3822(b)(1)(B) and (2)(A), the issue is whether or not the land in question is, indeed, naturally occurring "wetlands" regulated by the statute at all. The point is, there has to be an initial determination, at the burden of the agency, that the land upon which the production occurs is within the purview of the Swampbuster legislation. If it is, then the burden of establishing an exemption falls upon the producer shown to be ineligible. Use of 7 C.F.R. § 12.5(b)(9) to throw this first responsibility upon Downer violates the statutory scheme and, perhaps, due process. The government has contended throughout this proceeding, and in its brief to the court, that a man-made "dugout" or "water hole" produces a regulated "wetland" subject to a declaration of ineligibility under the Act. This interpretation, however, clearly flies in the face of the plain, unambiguous language of 16 U.S.C. § 3822(b)(1)(B) and (2)(A).

We review an administrative decision de novo. <u>Von Eye v. United States</u>, No. 95-3034, slip op. at 6 (8th Cir. Aug. 9, 1996) (citing <u>Lockhart v. Kenops</u>, 927 F.2d 1028, 1032 (8th Cir.), <u>cert. denied</u>, 502 U.S. 863 (1991)). We must uphold the agency decision "unless it is `arbitrary, capricious, an abuse of discretion, <u>or</u>

-22-

<u>otherwise not in accordance with law</u>.'" <u>Von Eye</u>, slip op. at 6 (quoting 5 U.S.C. § 706(2)(A)) (emphasis added).

Given the agency's overreaching and erroneous interpretation of the statute, its decision cannot be "in accordance with law." Further, any regulation that purports to relieve the agency of its obligation to follow the law as enacted by Congress is either inapplicable or must be disregarded. <u>See</u>, <u>e.g.</u>, <u>Newton v. Chater</u>, No. 96-1096, slip op. at 9-11 (8th Cir. Aug. 9, 1996).

## III.  CONCLUSION

Because the agency, relying on unsupportable statutory interpretation, failed to properly establish whether the land in question is regulatable "wetlands," or not, I would reverse the determination of ineligibility as arbitrary, capricious and not in accordance with the law. I would remand this tempest to the agency teapot for consideration of this important issue.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.