**B & D LAND AND LIVESTOCK CO.,**
**an Iowa corporation, Plaintiff,**

v.

**Ann VENEMAN, Secretary, United**
**States Department of Agriculture,**
**Defendant.**

**No. C 03–3086–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Aug. 17, 2004.

Thomas A. Lawler, Lawler & Swanson, PLC, Parkersburg, IA, for Plaintiff.

Martha A. Fagg, US Attorney's Office, Sioux City, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER ON JUDICIAL REVIEW OF FINAL AGENCY DETERMINATION

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ..................................................1201
 A. Factual Background ......................................1201
 B. Procedural Background ..................................1203
 1. The first administrative appeal.....................1203
 2. The first action for judicial review ...............1204
 3. The second administrative appeal .................1205
 4. The second action for judicial review.............1206

II. LEGAL ANALYSIS ............................................1208
 A. Federal Protection Of Wetlands .......................1208
 B. Standards For Judicial Review .......................1208
 C. Application Of The Standards .........................1209
 1. Reviewability of the 1999 wetland determination ....................1209
 a. Arguments of the parties .......................1209
 b. Rules for statutory interpretation ..............1210
 c. Provisions of 16 U.S.C. § 3822 ................1211
 d. Application of the provisions ..................1213
 2. Other assertions of error .......................1216

III. CONCLUSION ...............................................1216

This action for judicial review is the plaintiff's second such action seeking review of a determination by the USDA that the plaintiff "converted" "wetland" in violation of the "Swampbuster" Act, 16 U.S.C. §§ 3801, 3821–24. In the plaintiff's first action, the court first preliminarily enjoined enforcement actions by the USDA, *see B & D Land and Livestock Co. v. Veneman*, 231 F.Supp.2d 895 (N.D.Iowa 2002), then remanded the action, at the Secretary's request, for further review upon a complete record. *See B & D Land and Livestock Co. v. Veneman*, No. C 02–3051–MWB, slip op. (N.D.Iowa Jan. 18, 2003). This second action for judicial review challenges the USDA's determination, after the prior remand, to stand upon its prior determination that the plaintiff "converted" "wetland" in 2000 and its further determination that the plaintiff is not entitled to equitable relief from the consequences of such a "conversion."

### I. INTRODUCTION

#### A. Factual Background

As was the case in the plaintiff's first action for judicial review, most of the facts in this action are undisputed. *See B & D Land and Livestock Co.*, 231 F.Supp.2d at

898. Indeed, the parties' briefing does not reveal any significant difference in the pertinent facts as presented in this action from those presented in the first action.

Thus, there is no dispute that this case involves a purported wetland violation, involving "conversion" of 0.9 acres of "wetland," on Tract # 1653, Section 32, Owen Township, Cerro Gordo County, Iowa. Tract # 1653 is owned and farmed by plaintiff B & D Land and Livestock Company (B & D). The president and sole shareholder of B & D is Larry L. Doane. After purchasing the pertinent farmland in 1997, B & D requested that the Natural Resources Conservation Service (NRCS), which is a department of the USDA, make a certified wetland determination as to Tract # 1653. The NRCS completed that wetland determination on April 27, 1998, and after a review requested by B & D, certified three areas on Tract # 1653 as "wetland," designated "W," on January 20, 1999 (hereinafter, the 1999 wetland determination). Administrative Record at 58.

B & D initiated an administrative appeal of the 1999 wetland determination, but then withdrew the administrative appeal. *See* Administrative Record at 48. Mr. Doane testified at the administrative hearing on his subsequent administrative appeal that he withdrew the administrative appeal of the 1999 wetland determination, because he "didn't understand the system." Administrative Record at 335. Moreover, Mr. Doane asserted that he had received assurances from Tony Moore, the District Conservationist of the NRCS, that B & D could remove certain "woody vegetation" from the Tract. The parties continue to dispute whether Mr. Moore ever gave Mr. Doane such assurances. The USDA maintains that Mr. Moore only told Mr. Doane that he could remove woody vegetation from "upland" areas of the Tract, but not from the designated "wetland" area.

B & D grew grass or hay on the Tract in 1998 and 1999, cutting the hay around existing woody vegetation. Mr. Doane testified that he did not encounter any problems from excessive wetness in growing or cutting hay on the Tract. There is no dispute that in 2000, B & D removed woody vegetation from the designated wetland on Tract # 1653. Mr. Doane testified that the woody vegetation removed was less than one inch in diameter and approximately six feet tall at most, although very dense. He testified that he removed the woody vegetation, because it was "an aggravation to farming." Administrative Record at 343. He testified, further, that larger trees were removed from the "upland" area, which was not designated as wetland. He then plowed the entire tract, except for the designated wetland in the southeast corner of the Tract, which is not at issue here. B & D raised corn on the Tract in the calendar year 2000 and soybeans in the calendar year 2001. Mr. Doane testified at the administrative hearing that he had no difficulties with wetness in planting or harvesting the row crops in 2000 or 2001.

Tony Moore, the District Conservationist, discovered the removal of woody vegetation from the designated wetland on April 14, 2000, shortly after it occurred, in the course of other business on an adjacent tract of land owned by a different producer. Mr. Moore took photographs of removed vegetation, some of it partially burned; a bulldozer on the property; and a trench, partially filled with water despite no recent rainfall, into which some of the cut vegetation had been dumped. By letter dated April 17, 2000, Mr. Moore notified B & D that B & D had "converted" wetland in violation of 16 U.S.C. § 3821–24 on 0.9 acres of Tract # 1653 "by grubbing of trees and shrubs on this wetland area." *See* Administrative Record at 42 (letter

from Mr. Moore);[1] *see also id.* at 45–46 ("Highly Erodible Land and Wetland Conservation Determination").[2] B & D appealed this preliminary determination, contending that the shrubs and woody vegetation were removed with a field cultivator, not by a bulldozer, but Mr. Moore upheld his preliminary determination upon review. B & D's administrative odyssey then began.

### B. Procedural Background

#### 1. The first administrative appeal

In the first round of B & D's administrative appeal, the FSA County Committee determined that there was merit to the appeal and asked the NRCS State Conservationist to review the file. However, the State Conservationist, Leroy Brown, notified the Director of the FSA County Committee on July 30, 2001, that the file had been reviewed and that "[t]he administrative record has ample technical documentation per current technical federal wetland determination methodology that the site has wetland and the manipulation in 2000 caused the site to meet converted wetland criteria." Administrative Record at 205. Specifically, the State Conservationist concluded that "[t]he 0.9 acres of CW + 2000 determination is correct per Federal Wetland Delineation Methodology." *Id.*

B & D next appealed the determination that it had "converted" wetland to the USDA's National Appeals Division (NAD). A NAD Hearing Officer held an evidentiary hearing on December 6, 2001, at Mason City, Iowa, at which B & D presented evidence, but no one appeared on behalf of the agency. Instead, the USDA subsequently submitted a written statement in support of its position. On January 18, 2002, the Hearing Officer issued an appeal determination in which he also concluded that B & D had converted a wetland by removing woody vegetation. Although the Hearing Officer found that the NRCS District Conservationist had told B & D's president that he could remove certain woody vegetation on Tract # 1653, the Hearing Officer determined that the permission was for the removal of woody vegetation other than that in the designated wetland. *See* Administrative Record at 213. The Hearing Officer then concluded that "[i]n 2000 the Appellant converted the wetland (W) by removing woody vegetation from it." *Id.* The Hearing Officer next concluded that, while 7 C.F.R. § 11.9(e) grants the Director of the NAD the authority to grant equitable relief, that authority is not granted to Hearing Officers, who instead are responsible for developing the record for the Director to make a decision on equitable relief. *Id.* The Hearing Officer's specific "determination" was as follows: "The Agency's designation of a site as a converted wetland (CW + 2000) is not erroneous." *Id.*

At the final stage of its first administrative appeal, B & D requested review of the Hearing Officer's determination by the Director of NAD. On March 27, 2002, William A. Crutchfield, the Acting Director of Review at NAD, issued his review, again upholding the Agency's determination. The Acting Director concluded, *inter alia,* as follows:

1. In addition to the Bates Stamp page number indicated above, this document bears a handwritten page number of 46 in the present Administrative Record. Although it is not immediately apparent whether the Bates Stamp or handwritten page numbers are meant to apply to the present Administrative Record, the green description of documents in the record would seem to indicate that the Bates Stamp page numbers are the relevant ones.

2. As with the previous document, in addition to the Bates Stamp page numbers indicated above, this document bears handwritten page numbers of 49–50 in the present Administrative Record.

On December 1, 1997, the Appellant requested a certified wetland determination on FSN 2091, tract 1653. In 1998, NRCS designated three fields on tract 1653 as wetlands and notified the Appellant of such. In April 2000, NRCS found that the Appellant had converted wetland on field UN1. The Appellant was aware of the wetland on field UN1 and removed shrubs and woody vegetation in violation of wetland provisions. The removal of the shrubs and woody vegetation converted 0.9 acres, and made production of an agricultural commodity possible. The NRCS complied with regulatory requirements in determining CW on field UN1. Substantial evidence supports the Hearing Officer's determination that the Agency did not err in its decision that the Appellant converted wetlands.

Director Review Determination, Administrative Record (Case No. C 02–3051–MWB) at 269 (¶ 3).[3] The Acting Director also rejected B & D's contention that it had a right to a review of the 1999 wetland determination, because the Acting Director concluded that B & D had "waived the right for a review of NRCS wetland determination" by filing an administrative appeal of the determination, but then withdrawing it. Id. (¶ 4). The Acting Director acknowledged that 7 C.F.R. § 11.9(e) granted the Director of NAD the authority to grant equitable relief, but concluded that "[t]he circumstances of this case do not warrant equitable relief." Id. (¶ 5). The Acting Director also concluded that "Appellant failed to prove by a preponderance of evidence that the Agency's decision was erroneous." Id. at 270 (¶ 6); see also Administrative Record (present case) at

281 (¶ 6). The Acting Director, therefore, made the following determinations: (1) that "[t]he Hearing officer's determination is upheld"; (2) that "[e]quitable relief is denied"; and (3) that his determination "concludes the administrative appeal of this case." Id. (Determination); see also Administrative Record (present case) at 281 (Determination).

On July 19, 2002, the FSA notified B & D and Larry Doane that they were ineligible for USDA program benefits for 2000 and all subsequent program years because of the conversion of the wetland in 2000 and demanded repayment of benefits paid from 2000 to the date of the letter, or a total of $71,944.77.

### 2. The first action for judicial review

B & D filed its first lawsuit for judicial review and declaratory judgment on July 10, 2002. In its first complaint for judicial review, B & D demanded judgment as follows:

A. That this Court declare that the Agency's action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; was in excess of statutory jurisdiction, authority or limitations or short of statutory right; was without observance of procedure required by law, and was unsupported by substantial evidence, all in violation of 5 U.S.C. § 706.

B. That this Court remand the matter to the Defendant with specific instructions that the Defendant determine:

---

**3.** The pertinent page of the Acting Director's Review is missing from the Administrative Record submitted in this case. It should have appeared between pages 280 and 281 of the present Administrative Record, because page 280 ends with numbered paragraph 1 of the

Acting Director's Review, but page 281 continues with numbered paragraph 6. Consequently, the court has relied on the copy of the Acting Director's Review Determination submitted in B & D's first action for judicial review, Case No. C 02–3051.

1. that the removal of woody vegetation by the Plaintiff did not impair or reduce the flow and circulation of water and had a minimal effect on the wetland criteria;

2. the wetland determination of January 20, 1999, was not correct and should have been that the area was a prior converted wetland;

3. that the woody vegetation removed was shrubs, seedlings or young trees less than 5 years old; and

4. that the wetland characteristics present in 1999 returned to the property after December 23, 1985, because of lack of maintenance beyond the control of the Plaintiff.

C. That this Court find the position of the United States was not substantially justified and grant Plaintiff reasonable attorney fees pursuant to the provisions of the Equal Access to Justice Act 5 U.S.C. § 2412.

D. That this Court grants the Plaintiff costs of suit herein.

E. That the Court grants such further and other relief as this Court deems appropriate.

Complaint at 9–10. The Secretary answered B & D's first complaint for judicial review on September 13, 2002, denying that B & D was entitled to the judgment requested and praying that the court would, instead, dismiss the cause of action with costs to the plaintiff.

By order dated September 16, 2002, the court established a briefing schedule on the merits of B & D's first complaint for judicial review. B & D filed its brief on the merits on October 21, 2002, but this court entertained B & D's September 20, 2002, motion for preliminary injunction to enjoin enforcement actions by the USDA before the deadline for the Secretary's brief on the merits. After a hearing, the court granted B & D's motion for preliminary injunction on November 15, 2002, preliminarily enjoining the Secretary of the USDA from pursuing, instituting, continuing, or completing any and all enforcement actions, including, but not limited to, certification of the ineligibility of B & D or any of its shareholders for farm program benefits pursuant to the Food Security Act, 16 U.S.C. §§ 3821–3824, as amended, until such time as the preliminary injunction is dissolved or vacated, by this court or a reviewing court.

Instead of filing a brief on the merits, on January 10, 2003, the Secretary filed a motion for remand for further administrative review upon a complete record, because of the absence of a verbatim transcript from the record reviewed by the USDA's NAD and from the record presented to this court. The court granted that motion on January 18, 2003, *see B & D Land and Livestock Co. v. Veneman*, No. C 02–3051–MWB, slip op. (N.D.Iowa Jan. 18, 2003), and B & D's first action for judicial review came to an end.

### 3. *The second administrative appeal*

On September 2, 2003, Roger Klurfeld, the Director of NAD, filed his decision on the remand to the USDA of B & D's challenge to the USDA's determination that B & D converted wetland in 2000. The Director again upheld the Hearing Officer's determination and denied B & D's request for equitable relief.

Somewhat more specifically, the Director first rejected B & D's contention that the USDA could review the 1999 "wetland" determination as well as the 2000 "conversion" determination, because, the Director concluded, "[w]hen [B & D] withdrew its appeal of the initial wetland determination in 1999, it relinquished its right for further review by other USDA officials, including NAD, on NRCS' wetland determination." Administrative Rec-

ord at 271. The Director explained, further, that "[i]n this case, NAD can issue a decision only about the wetland violation, which is the basis of the adverse determination at issue in this appeal." *Id.* Second, the Director rejected B & D's request that NAD make a "minimal effects" determination, because only NRCS could make such a determination, B & D had not requested that NRCS do so, and NRCS had made no adverse determination on that question that could be considered on administrative appeal. *Id.* Third, the Director rejected B & D's request for equitable relief from ineligibility for USDA program benefits, which was premised on B & D's contention that Mr. Doane had been told by Mr. Moore and other NRCS officials that he could remove the trees from the wetland. *Id.* The Director rejected this contention, because he found that B & D's "assertion is not correct because the [administrative record] shows that NRCS advised [B & D] that it could remove woody vegetation from the uplands but not from the wetlands," but B & D nevertheless removed woody vegetation from both the wetland and non-wetland portions of the Tract. *Id.* Thus, the Director found no circumstances warranting equitable relief. *Id.* Finding no error in the adverse administrative decision, the Director affirmed the Hearing Officer's determination and denied equitable relief. B & D's second action for judicial review followed.

#### 4. The second action for judicial review

B & D filed its second complaint for judicial review, which is now before the court, on September 30, 2003. In the present action, B & D seeks the following relief:

##### Declaratory Judgment

53. The Final Agency action was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, was in excess of statutory jurisdiction, authority, or limitations or short of statutory rights; was without observance of procedure required by law, and was unsupported by substantial evidence for reasons that include the following:

A. Any person who has been or will be denied USDA program benefits as a result of any wetland determination made in accordance with 7 C.F.R. 12 may obtain a review of such determination in accordance with the administrative appeals procedures of USDA. The Agency can not make a converted wetland determination unless it originally makes a wetland determination. One of the determinations which is the basis for Plaintiff being denied USDA program benefits is the determination that the 3.5 acres in t1653 is a wetland so the wetland determination is subject to review.

B. A certified wetland determination remains valid and in effect only until such time as the person effected [sic] by the certification requests a review.

C. The Plaintiff did offer substantial evidence that the wetland determination was erroneous.

D. Holding that the removal of woody vegetation in and of itself is a conversion of a wetland without any consideration of the effect of the removal of woody vegetation on the wetland criteria or whether the removal of the woody vegetation resulted in any impairing or reducing of the flow and circulation of water [was contrary to law(?) ].

E. Failing to grant equitable relief when the Plaintiff was told by the

District Conservationist that he [sic] could remove woody vegetation [was erroneous, arbitrary, and capricious(?)]. The District Conservationist now says he told the Plaintiff the Plaintiff could remove woody vegetation from the upland area. The evidence shows that there were trees on the wetland and on the upland contiguous to each other and it is easy to see why there could be confusion as to the District Conservationist's statement.

F. Failing to grant a minimal effect exemption [was erroneous, arbitrary, and capricious(?)].

G. Failing to consider whether the slides used by the Agency in making its wetland determination were correctly labeled as to the year of the slide [was erroneous, arbitrary, and capricious (?)].

*Demand for Judgment*

Plaintiff demands a judgment in its favor as follows:

A. That this Court declare the Agency's action as arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; in excess of statutory jurisdiction, authority or limitations or short of statutory right; without observance of procedure required by law[;] and unsupported by substantial evidence, all in violation of 5 U.S.C. § 706.

B. That this Court remand the matter to the Defendant with specific instructions that the Defendant determine:

1. that the removal of woody vegetation by the Plaintiff did not impair or reduce the flow and circulation of water and had a minimal effect on the wetland criteria;

2. the wetland determination of January 20, 1999, was not correct and should have been that the area was a prior converted wetland;

3. that the woody vegetation removed was shrubs, seedlings or young trees less than 5 years old; and

4. that the wetland characteristics present in 1999 returned to the property after December 23, 1985, because of lack of maintenance beyond the control of the Plaintiff.

C. That this Court find the position of the United States was not substantially justified and grant Plaintiff reasonable attorney fees pursuant to the provisions of the Equal Access to Justice Act 5 U.S.C. § 2412.

D. That this Court grants [sic] the Plaintiff costs of suit herein.

E. That the Court grants such further and other relief as this Court deems appropriate.

Complaint at 9–11 (docket no. 1). The USDA answered B & D's Complaint on December 5, 2003, denying that B & D is entitled to any of the relief it seeks and requesting that the court, instead, dismiss B & D's cause of action with costs to B & D. *See* Answer (docket no. 6).

By order dated December 17, 2003, the court set a briefing schedule for the parties on the merits of B & D's action for judicial review. B & D filed its brief on February 2, 2004. After an extension of time to do so, the USDA filed its response on March 19, 2004. B & D then filed a reply on April 2, 2004. The court now

deems this action for judicial review fully submitted.

## II. LEGAL ANALYSIS

### A. Federal Protection Of Wetlands

This court has considered the legal background and regulatory regime for wetlands protection under the "Swampbuster" Act, 16 U.S.C. §§ 3801, 3821–24, in three prior decisions. *See Branstad v. Glickman*, 118 F.Supp.2d 925, 927–28 (N.D.Iowa 2000) (*Branstad I*); *Branstad v. Veneman*, 145 F.Supp.2d 1011, 1014 (N.D.Iowa 2001) (*Branstad II*); *Branstad v. Veneman*, 212 F.Supp.2d 976 (N.D.Iowa 2002) (*Branstad III*). Therefore, the court will not reiterate that legal background here. Suffice it to say that the purpose of the "Swampbuster" Act is to " 'combat the disappearance of wetlands through their conversion into crop lands.' " *Branstad III*, 212 F.Supp.2d at 986 (quoting *Barthel v. USDA*, 181 F.3d 934, 936 (8th Cir.1999), in turn quoting *Gunn v. USDA*, 118 F.3d 1233, 1235 (8th Cir.1997), *cert. denied*, 522 U.S. 1111, 118 S.Ct. 1042, 140 L.Ed.2d 108 (1998)). Thus, "the goal of the Swampbuster Act [w]as preservation of wetlands, and the 'stick' for enforcement of its provision [w]as loss of federal farm program benefits if wetlands are improperly converted." *See Branstad I*, 118 F.Supp.2d at 940 (citing *Barthel*, 181 F.3d at 936; *Gunn*, 118 F.3d at 1235); *see also id.* at 927–28 (discussing generally the regulatory regime under the Swampbuster Act). In the present case, the consequence of the USDA's determination that B & D has "converted" "wetland" would be the loss of farm program benefits for crop year 2000 and thereafter.

### B. Standards For Judicial Review

In *Branstad III*, this court also stated the standards applicable in a judicial review of the USDA's determination that a producer has "converted" wetland, as follows:

The Administrative Procedure Act (APA), 5 U.S.C. §§ 701–06, is the correct vehicle for judicial review of USDA administrative action under the Swampbuster Act. *See Barthel*, 181 F.3d at 937 (applying APA judicial review to USDA determinations under the Swampbuster Act); *Downer [v. United States by USDA]*, 97 F.3d [999] 1002 [(8th Cir. 1996)] (same); *Von Eye [v. United States]*, 92 F.3d [681,] 685 [(8th Cir. 1996)] (same). However, judicial review under the APA is only available for a "final" agency determination. *See* 5 U.S.C. § 704 (permitting review of "final" agency action); *In re Russell*, 155 F.3d 1012, 1013 (8th Cir.1998) ("the APA waives immunity only when the agency action is final") (citing 5 U.S.C. § 704). . . .

\* \* \* \* \* \*

Under the APA, a final agency determination may be overturned on judicial review only if it is arbitrary and capricious, an abuse of discretion, or otherwise contrary to law. *See* 5 U.S.C. § 706; *see also Barthel*, 181 F.3d at 937; *Downer v. United States*, 97 F.3d 999, 1002 (8th Cir.1996) (in an action for judicial review of administrative determinations concerning wetlands under the Swampbuster Act, the court concluded that "[o]ur review . . . is limited to a determination of whether the decisions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' ") (quoting 5 U.S.C. § 706(2)(A)). As this court explained in *Branstad I*,

"This narrow review entails a 'searching and careful' de novo review of the administrative record presented to determine 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' "

[*Downer,* 97 F.3d at 1002] (quoting *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).

More specifically,

To perform this review the court looks to whether the agency considered those factors Congress intended it to consider; whether the agency considered factors Congress did not intend it to consider; whether the agency failed entirely to consider an important aspect of the problem; whether the agency decision runs counter to the evidence before it; or whether there is such a lack of a rational connection between the facts found and the decision made that the disputed decision cannot "be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). If the agency itself has not provided a reasoned basis for its action, the court may not supply one. *Id.*

Nonetheless, the reviewing court may not substitute its judgment for that of the agency and must give substantial deference to agency determinations. *Id.* This deference is particularly appropriate when the agency determination in issue concerns a subject within the agency's own area of expertise. *Marsh,* 490 U.S. at 377–78, 109 S.Ct. at 1861–62. An agency making fact-based determinations in its own field of expertise, particularly where those determinations are wrapped up with scientific judgments, must be permitted "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Id.* at 378, 109 S.Ct. at 1861.

*Downer,* 97 F.3d at 1002.

*Branstad I,* 118 F.Supp.2d at 939–40. *Branstad III,* 212 F.Supp.2d at 988–89. The formulations of the applicable standard of review by the parties in this action do not differ in any legally significant respect from this court's statement of the standard above.

### C. Application Of The Standards

B & D asserts three errors by the USDA: (1) refusal to review the 1999 wetland determination in B & D's administrative appeal of the "conversion" determination; (2) failure to consider whether removal of woody vegetation in 2000 impaired or reduced the flow, circulation, or reach of water in the wetland; and (3) failure to consider whether the removal of woody vegetation in 2000 had only a "minimal effect" on the function and value of the wetland or the functional hydrological and biological value of the wetland area. The court finds it necessary to address in detail only the first of B & D's contentions.

### 1. Reviewability of the 1999 wetland determination

#### a. Arguments of the parties

As to its first contention of error, B & D asserts that the statutory and regulatory scheme permits a person adversely affected by a woody veg delineation to request a review of that woody veg delineation pursuant to 16 U.S.C. § 3822(a)(4) and forbids the USDA to make a subsequent wetland delineation certification unless so requested by a person adversely affected by the existing determination pursuant to 16 U.S.C. § 3822(a)(6). Thus, B & D argues that the finality of wetlands determinations is for the benefit of producers, not the USDA. B & D argues that it is now adversely affected by the 1999 wetland determination, because without a wetland determination, there could be no "conver-

sion" of woody veg. Thus, B & D argues that the USDA erred by refusing to consider B & D's challenge to the 1999 wetland determination. B & D argues, further, that it presented copious evidence that the supposed "wetland" was actually "converted" prior to 1985, for example, because there was an existing tile drainage system that only failed to work owing to lack of maintenance, but worked after maintenance by an adjacent property owner. B & D also contends that the record demonstrates that the USDA relied on an incorrectly labeled slide of an aerial photograph of Tract # 1653, which purported to show conditions in 1985, in making its erroneous determination that wetland existed on the Tract at the critical date for application of the Swampbuster Act.

In response, the USDA argues that neither the agency nor this court has jurisdiction to review the 1999 wetland determination, because B & D dropped its NAD appeal concerning that determination and subsequently "converted" the wetland. The USDA notes that B & D filed a timely administrative appeal from the 1999 wetland determination, but then voluntarily withdrew that appeal on August 16, 1999. Thus, the USDA asserts that the agency, and more particularly the NAD Director, never had the opportunity to review the 1999 wetland determination and that B & D, therefore, failed to exhaust administrative remedies on that issue pursuant to 7 U.S.C. § 6912(e). The USDA argues that judicial review is a process to determine whether the agency erred, not a process for the courts to mediate disputes individuals have with an agency. Thus, the court cannot consider unexhausted claims.

In reply, B & D asserts that the USDA's argument simply misses the point that 16 U.S.C. § 3822(a)(4) and 7 C.F.R. § 12.12 entitle a person affected by the certification of a wetland to review of that wetland determination. B & D points out that there is no statutory basis for holding that certified wetland determinations become "unreviewable," even if the initial wetland determination becomes final and unappealable thirty days after it was issued. B & D also argues that the burden is on the USDA to show that an area is a wetland before it takes the drastic step of denying a producer program benefits for "converting" a wetland.

## 2. The statutory scheme

### b. Rules for statutory interpretation

Because the court finds that B & D's first assertion of error can be resolved primarily by proper interpretation of the applicable statute, the court begins this portion of its analysis with a brief reprise of the rules of statutory interpretation. This court has, on numerous occasions, pointed out that the first approach to statutory interpretation is the "plain language" of the statute in question. *See, e.g., Kinkaid v. John Morrell & Co.*, 321 F.Supp.2d 1090, 1103 n. 3 (N.D.Iowa 2004) (citing such reiterations). The Supreme Court describes this rule as the "one, cardinal canon before all others." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *United States v. Goldenberg*, 168 U.S. 95, 102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897); *Oneale v. Thornton*, 10 U.S. (6 Cranch) 53, 68, 3 L.Ed. 150 (1810)). When the language of the statute is plain, the inquiry also ends with the language of the statute, for in such instances "the sole function of the courts is to enforce [the statute] according to its terms." *Ron Pair*, 489 U.S. at 241,

109 S.Ct. 1026 (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). This "plain language" or "plain meaning" rule of interpretation is not limited to the meaning of individual terms; rather, "[s]uch an inquiry requires examining the text of the statute as a whole by considering its context, 'object, and policy.'" *Harmon Indus., Inc. v. Browner,* 191 F.3d 894, 899 (8th Cir.1999) (quoting *Pelofsky v. Wallace,* 102 F.3d 350, 353 (8th Cir.1996)). Thus, this court must "effectuate the intent reflected in the language of the enactment and the legislative process," *Colorado v. Idarado Mining Co.,* 916 F.2d 1486, 1494 (10th Cir.1990), *cert. denied,* 499 U.S. 960, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991), and it is not required to "produce a result demonstrably at odds with the intentions of [the statute's] drafters." *Ron Pair Enters., Inc.,* 489 U.S. at 242, 109 S.Ct. 1026 (internal quotation marks omitted).

■ An agency's interpretation of statutes and regulations that it administers is subject to a *de novo* standard of review, under which the courts "accord substantial deference to the agency's interpretation of the statutes and regulations it administers." *See Patel v. Ashcroft,* 375 F.3d 693, 696 (8th Cir.2004) (citing *Regalado–Garcia v. INS,* 305 F.3d 784, 787 (8th Cir.2002)) (adopting this portion of the appellant's argument). Thus, courts will "defer to an agency's interpretation of [a statute that the agency is charged with administering] if that interpretation is consistent with the plain meaning of the statute or is a permissible construction of an ambiguous statute." *Coalition for Fair and Equitable Reg. of Docks on Lake of the Ozarks v. FERC,* 297 F.3d 771, 778 (8th Cir.2002). However, courts do not defer to an agency interpretation that is "inconsistent with the plain language of the statute or constitutes an unreasonable interpretation of an ambiguous statute." *Afolayan v. INS,* 219 F.3d 784, 787 (8th Cir.2000). In other words, courts "do not defer to legal interpretations that are arbitrary, capricious, or manifestly contrary to the statutory law." *Patel,* 375 F.3d at 696 (citing *Shaar v. INS,* 141 F.3d 953, 955–56 (9th Cir.1998), and *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–845, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

### c. Provisions of 16 U.S.C. § 3822

The court finds that B & D's first assertion of error is resolved by consideration of 16 U.S.C. § 3822(a). As amended on April 16, 1996, § 3822(a) provides as follows:

**(a) Delineation by the Secretary**

**(1) In general**

Subject to subsection (b) of this section and paragraph (6), the Secretary shall delineate, determine, and certify all wetlands located on subject land on a farm.

**(2) Wetland delineation maps**

The Secretary shall delineate wetlands on wetland delineation maps. On the request of a person, the Secretary shall make a reasonable effort to make an on-site wetland determination prior to delineation.

**(3) Certification**

*On providing notice to affected persons, the Secretary shall—*

(A) certify whether a map is sufficient for the purpose of making a determination of ineligibility for program benefits under section 3821 of this title; and

**(B)** *provide an opportunity to appeal the certification prior to the certification becoming final.*

### (4) Duration of certification

A final certification made under paragraph (3) shall remain valid and in effect as long as the area is devoted to an agricultural use or until such time as the person affected by the certification requests review of the certification by the Secretary.

### (5) Review of mapping on appeal

In the case of an appeal of the Secretary's certification, the Secretary shall review and certify the accuracy of the mapping of all land subject to the appeal to ensure that the subject land has been accurately delineated. Prior to rendering a decision on the appeal, the Secretary shall conduct an on-site inspection of the subject land on a farm.

### (6) Reliance on prior certified delineation

No person shall be adversely affected because of having taken an action based on a previous certified wetland delineation by the Secretary. The delineation shall not be subject to a subsequent wetland certification or delineation by the Secretary, unless requested by the person under paragraph (4).

16 U.S.C. § 3822(a) (emphasis added).

In *Branstad III*—which B & D cites only in passing and the USDA ignores completely—this court interpreted 16 U.S.C. § 3822(a)(4), upon which B & D in part relies for its contention that it is entitled to administrative review of the 1999 wetland determination, now that B & D is affected by an agency determination that it "converted" that wetland. *See Branstad III*, 212 F.Supp.2d at 994–99. As this court explained in *Branstad III*, in pertinent part,

[T]he *statute* as amended in 1996 expressly states that "a final certification" is only "valid and in effect as long as the area is devoted to an agricultural use *or*

until such time as the person affected by the certification requests review of the certification by the Secretary." [16 U.S.C. § 3822](a)(4) (emphasis added). Thus, even assuming that the 1991 wetland determination for Tract # 2024 was "final and certified," it was valid only until "*the person affected by the determination* "—not just the person affected *at the time of the certification*—"request[ed] review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4) (as amended April 4, 1996). Nothing about the language of subsection (a)(4) suggests that the "person affected by the determination" must be the person who owned the property *at the time* of the determination. To the contrary, in light of the plain language of the statute, the statute must be read to mean that *any* person *subsequently affected* by an *existing* wetland determination may invalidate the existing certification by requesting review of the certification by the Secretary. This reading is supported by comparison with subsection (a)(4), regarding the other condition for invalidating an existing certification, which is cessation of a period during which "the area is devoted to an agricultural use," which also has no time limitation on when the cessation of such activity may occur, causing invalidation of the wetland determination. 16 U.S.C. § 3822(a)(4). This reading is supported further by subsection (a)(6), which prohibits the Secretary from making any "subsequent wetland certification or delineation," without time limitation or reference to the person owning the land at the time of the existing determination, "*unless* requested by the person under paragraph (4)," *i.e.*, "the person affected by the determination." *See* 16 U.S.C. § 3822(a)(6) (emphasis added) & (a)(4). In other words, pursuant to § 3822(a)(6), the Secretary may not in-

validate an existing, certified wetland determination unless asked to do so by a person then affected by the determination, but, pursuant to § 3822(a)(4), a person affected by an existing, certified wetland determination may request that the Secretary review an existing certified determination, which ends the "validity" of the existing certified determination.

*Branstad III,* 212 F.Supp.2d at 998–97 (emphasis in the original).

In this case, however, B & D had previously initiated an administrative appeal of the 1999 wetland determination, then abandoned that administrative appeal, before B & D was notified of a "conversion" violation. These circumstances require the court to consider § 3822(a)(3), as well as § 3822(a)(4). *Harmon Indus., Inc.,* 191 F.3d at 899 ("plain language" interpretation is not limited to the meaning of individual terms, but also "requires examining the text of the statute as a whole by considering its context, 'object, and policy' ") (quoting *Pelofsky,* 102 F.3d at 353).

Subsection (a)(3) of § 3822, which is quoted in full above, provides that the Secretary shall certify the sufficiency of maps delineating wetlands for the purpose of making determinations of whether to deny program benefits and shall "provide an opportunity to appeal the certification prior to the certification becoming final." 16 U.S.C. § 3822(a)(3). Thus, the statute expressly provides for an administrative appeal process *prior to* final certification of a wetland. *See Connecticut Nat'l Bank,* 503 U.S. at 253, 112 S.Ct. 1146 (reliance first on the "plain language" of a statute is the "one, cardinal canon before all others"); *Ron Pair,* 489 U.S. at 241, 109 S.Ct. 1026 (when the language of a statute is plain, the inquiry ends with that language, and "the sole function of the courts is to enforce [the statute] according to its terms"). Subsection (a)(4) of § 3822 then

expressly provides that *"[a] final certification made under paragraph (3)* shall remain valid and in effect ... until such time as the person affected by the certification requests review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4) (emphasis added). Thus, subsection (a)(4) expressly provides for *a second administrative challenge* to a wetland determination, *after* the final certification of the wetland has become final, when a person affected by the certification requests review of the certification by the Secretary. *See Connecticut Nat'l Bank,* 503 U.S. at 253, 112 S.Ct. 1146 (statutory interpretation begins with the "plain language" of the statute); *Ron Pair,* 489 U.S. at 241, 109 S.Ct. 1026 (when the language of a statute is plain, interpretation also ends with that language). Therefore, a wetland determination that has become "final" and "certified" pursuant to § 3822(a)(3) is not "unreviewable," because § 3822(a)(4) expressly provides for a further administrative challenge to that wetland determination. *See Branstad III,* 212 F.Supp.2d at 997–98 (so holding).

### d. Application of the provisions

In *Branstad III,* this court held that the Acting Director's determination that prior wetlands determinations were "unappealable" in the producers' challenges to subsequent findings of "conversion" of wetlands was "arbitrary and capricious, an abuse of discretion, and contrary to law." *Id.* at 997 (citing 5 U.S.C. § 706; *Barthel,* 181 F.3d at 937; and *Downer,* 97 F.3d at 1002, for these standards for overturning agency action under the Swampbuster Act). This court explained its rationale for this conclusion as follows:

First, the Acting Director's determination that the 1987 wetland determination was unappealable was plainly contrary to the record evidence that the 1987 determination was superseded in

1991. *See Downer,* 97 F.3d at 1002 ("whether the agency decision runs counter to the evidence before it" is a factor in determining whether an agency decision is arbitrary and capricious). Second, the Acting Director's determination that the 1991 wetland determination was "unappealable" is plainly contrary to law, *see id.* (another basis for overturning agency action), even assuming that the 1991 determination was "certified" and "final," because, pursuant to statute, that wetland determination was valid only until "the person affected by the determination request[ed] review of the certification by the Secretary." 16 U.S.C. § 3822(a)(4) (as amended April 4, 1996). The Branstads were such "person[s] affected by the [1991] determination," because they were the persons affected by the determination that there were wetlands on Tract # 2024 when they attempted to repair a tile drainage system on that tract. Again, to the extent that the USDA asserts that the "person affected" under § 3822(a)(4) must be the person who owned the land at the time of the original determination, not some subsequent owner, that reading is plainly contrary to the plain meaning of the statute.

\* \* \* \* \* \*

Also, to the extent that the Acting Director concluded that prior wetland determinations are "unappealable," even if they failed to take into account conversion of the wetlands prior to December 23, 1985, that determination was also contrary to law. *Downer,* 97 F.3d at 1002 (standard of judicial review of agency action). The Swampbuster Act expressly provides that "[n]o person shall become ineligible ... for program loans or payments ... [a]s the result of the production of an agricultural commodity on ... [a] converted wetland if the conversion of the wetland was commenced before December 23, 1985." 16

U.S.C. § 3822(b)(1)(A); *Barthel,* 181 F.3d at 936; *Gunn,* 118 F.3d at 1238. The Act also provides that "[n]o person shall become ineligible ... for program loans or payments ... [a]s the result of the production of an agricultural commodity on ... [a] converted wetland if the original conversion of the wetland was commenced before December 23, 1985, and the Secretary determines the wetland characteristics returned after that date as a result of ... the lack of maintenance of drainage, dikes, levees, or similar structures." 16 U.S.C. § 3822(b)(1)(G)(i) (emphasis added). To the extent that the Acting Director failed to consider whether the supposed wetlands on Tract # 2024 had been converted prior to December 23, 1985, or to consider whether wetland characteristics returned after that date as a result of the lack of maintenance of an existing drainage system, because the 1987 and 1991 wetland determinations were supposedly "unappealable," that failure was both contrary to law and an abuse of discretion. Such a conclusion shows that the agency failed to consider "those factors Congress intended it to consider," *i.e.,* whether there had been a pre–1985 conversion; "the agency considered factors Congress did not intend it to consider," *i.e.,* the supposed "unappealability" of agency determinations, where no statutory language supports a conclusion that agency determinations become "unappealable," and statutory language actually supports the contrary conclusion, as explained above; "the agency failed entirely to consider an important aspect of the problem," *i.e.,* whether there had been a pre–1985 conversion; and "the agency decision runs counter to the evidence before it," which here consists of copious evidence that the off-site wetland determinations in 1987 and 1991 failed to take into account an existing

drainage system representing a conversion of wetlands prior to December 23, 1985. *See Downer,* 97 F.3d at 1002 (identifying these factors in an abuse-of-discretion or arbitrary-and-capricious review [*999] of agency action).

Consequently, the Acting Director's "final" determination of "unappealability" of the 1987 and 1991 wetland determinations on Tract # 2024 must be overturned as arbitrary and capricious, an abuse of discretion, and contrary to law. With this conclusion, the Director Review Determination as to Tract # 2024 will be vacated in its entirety and the case will be remanded for agency action in conformity with the court's judgment. *Branstad III,* 212 F.Supp.2d at 997–99.

▮ This analysis in *Branstad III* paves the way for, but does not complete, the analysis of B & D's argument that the USDA erred by concluding that the 1999 wetland determination on Tract # 1653 was "unappealable." The USDA relies on the undisputed fact that B & D initiated, then abandoned, an administrative appeal of the 1999 wetland determination some time before it was charged with a wetland "conversion" violation. However, B & D's first abandoned administrative appeal was a § 3822(a)(3) appeal, that is, an appeal "prior to the certification becoming final." *See* 16 U.S.C. § 3822 (providing for an administrative appeal prior to a wetland certification becoming "final" and "certified"). Thus, contrary to the USDA's assertions, that prior administrative appeal did not bar further review of the 1999 wetland determination when B & D was notified of a wetland "conversion" violation. Rather, as explained above, § 3822(a)(4) expressly provides a producer a second bite at the apple to challenge the correctness of a wetland determination, *after that determination is "final" and "certified,"* when the producer is affected by that wetland determination, for example,

by being charged with a wetland "conversion" violation.

Notwithstanding that a court is ordinarily required to "accord substantial deference to the agency's interpretation of the statutes and regulations it administers," *Patel,* 375 F.3d at 696, the USDA's contrary interpretation in this case is entitled to no deference, because it is "inconsistent with the plain language of the statute." *See Afolayan,* 219 F.3d at 787 (stating this standard for giving no deference to an agency interpretation of a statute the agency is charged with administering); *cf. Coalition for Fair and Equitable Reg. of Docks on Lake of the Ozarks,* 297 F.3d at 778 (stating the obverse, that courts will "defer to an agency's interpretation of [a statute that the agency is charged with administering] if that interpretation is consistent with the plain meaning of the statute or is a permissible construction of an ambiguous statute"). To put it another way, the USDA's contrary interpretation is "arbitrary, capricious, or manifestly contrary to the statutory law," so no deference to it is required. *See Patel,* 375 F.3d at 696 (stating this standard).

Consequently, as in *Branstad III,* the Director's "final" determination that the 1999 wetland determination on Tract # 1653 is unreviewable in B & D's administrative challenge to the wetland "conversion" determination must be overturned as arbitrary and capricious, an abuse of discretion, and contrary to law. *See* 5 U.S.C. § 706 (standard of review under the APA); *Barthel,* 181 F.3d at 937 (applying this standard of review to agency action under the Swampbuster Act); *Downer,* 97 F.3d at 1002 (same). If the court reached such a conclusion, B & D asked the court to find and declare, further, that B & D offered substantial evidence that the 1999 wetland determination was erroneous, and remand with instructions to the agency to find that

the wetland determination of January 20, 1999, was not correct and should have been that the area was a prior converted wetland. However, the court concludes that such further declarations and instructions are beyond its authority, because the APA permits the court only to "hold unlawful and set aside agency action, findings, and conclusions found to" fail the standard of review. 5 U.S.C. § 706(2). Moreover, because the agency determined that the question was "unreviewable," the agency never made necessary factual determinations regarding the correctness of the 1999 wetland determination that this court could review. Therefore, the Director Review Determination as to Tract # 1653 will be vacated in its entirety and the case will be remanded for agency action in conformity with the court's judgment that the USDA must *first* determine whether the 1999 wetland determination on Tract # 1653 was correct, where B & D challenges the correctness of that determination pursuant to § 3822(a)(4) as a party affected by that determination. Only if the agency determines that the 1999 wetland determination was correct—which the court would find difficult to believe, in light of the evidence already in the record—will it be appropriate for the agency to consider whether or not B & D "converted" that wetland, or if B & D did, whether or not B & D is entitled to equitable relief.

### 2. Other assertions of error

B & D asserted other errors in the USDA's determination that B & D "converted" wetland. As to its second contention of error, B & D argues that the statutory and regulatory definitions of "converted wetland" explicitly or implicitly require not just the removal of woody vegetation, but removal of woody vegetation that impairs or reduces the flow and circulation of water. As B & D's third contention of error, B & D argues that the USDA also could not determine that re-moval of woody vegetation was a "conversion" without consideration of whether the removal had only a "minimal effect" on the wetland functions and values.

The court finds it unnecessary to reach these further contentions of error, because the underlying decisions of the USDA all followed from the erroneous conclusion *ante* that the 1999 wetland determination was "unreviewable." The remand of this matter for determination by the USDA of whether or not the 1999 wetland determination was correct makes consideration of other aspects of the USDA's decision regarding the purported wetland "conversion" premature. Of course, if, on remand, the USDA finds that the 1999 wetland determination was correct, and finds, further, that there was a "conversion" violation, and that B & D is not entitled to equitable relief from the consequences of that violation, then B & D will be entitled to further judicial review of those agency determinations.

### III. CONCLUSION

Upon the foregoing, the court finds and declares that the 1999 wetland determination was subject to "appeal" in the administrative proceedings concerning B & D's purported wetland "conversion" violation, and the agency's final determination to the contrary was arbitrary and capricious, an abuse of discretion, and contrary to law.

THEREFORE, the Director Review Determination as to Tract # 1653 is **vacated in its entirety** and this case is **remanded** for agency action in conformity with the court's judgment.

**IT IS SO ORDERED.**